OPINION OF THE COURT
Jasen, J.
We are asked to decide whether a defendant, who, with the advice and in the presence of counsel, prior to entering into a plea bargain initiated by him, voluntarily furnishes the District Attorney a preplea incriminating statement and, subsequent to the plea and conviction, voluntarily testifies against a codefendant at his trials, is entitled to preclude the People from using any of these statements against him at a subsequent trial ordered by the Appellate Division following suppression of statements made by defendant at the time of his arrest.
On February 18,1976, defendant and his friends, Edwin Fuller and Gary Thompson, robbed a gasoline service station in Farmingdale, Nassau County, New York. Defendant and Fuller entered the station and held the 16-year-old station attendant at gunpoint. Fuller then directed the boy to kneel in front of him with his head down. While defendant watched, Fuller shot and killed the boy. The three then fled in a car driven by Thompson. On March 27, 1976, after being taken to the police station, defendant made several statements admitting his complicity in the crime. Fuller and Thompson were arrested the same day. Fuller confessed, but Thompson did not.
Defendant and Fuller were indicted by a Nassau County Grand Jury on two counts of murder in the second degree, one for intentional murder and one for felony murder, and on related charges arising out of the service station robbery. Thompson was named as a codefendant in both indictments. After a joint hearing, suppression of defendant’s confessions, as well as that of Fuller, was denied. Fuller chose not to plea bargain and proceeded to trial where he was convicted. His conviction was upheld on appeal. (People v Fuller, 65 AD2d 823, mot for lv to app den 46 NY2d 943.)
*18 Defendant, however, chose a different course of action and on November 17, 1976, the day scheduled for his trial, his attorney approached the prosecutor to initiate plea negotiations. Defendant’s attorney represented that defendant would plead guilty and co-operate with the District Attorney by testifying at the trials of his codefendant Thompson in return for reducing the crime to which he would plead from a class A to a class B felony. The prosecutor requested that defendant give a complete account of the crime to demonstrate that he was sincere in his desire to co-operate. Defendant agreed, and, in the presence of his counsel, acknowledged that he was giving the statement voluntarily, without coercion. Thereupon, defendant, still in the presence of counsel, gave a complete account of the crime.
Later that day, defendant, his attorney and the prosecutor appeared in Nassau County Court where the guilty plea was formally entered and accepted.
The defendant and Thompson had also been charged in a Suffolk County indictment with committing an armed robbery of a liquor store on February 17,1976. On November 22, 1976, defendant reached an agreement with the Suffolk County prosecutor similar to that which had been approved in Nassau County, under which defendant would receive a sentence to run concurrently with his sentence in Nassau County.
Pursuant to his agreement to co-operate with the prosecutor, defendant, in the presence of his counsel, testified as a witness for the prosecution at the Thompson trial in Nassau County. Defendant’s testimony at this trial fully implicated him in the commission of the murder of the 16-year-old station attendant. On May 16, 1977, defendant again testified against Thompson in the latter’s trial in Suffolk County, and, in so doing, defendant made admissions which connected him to the Nassau County murder.
On May 24, 1977, defendant was sentenced on the Nassau County conviction to a term of imprisonment of 6 to 18 years, and on June 1, 1977, defendant was sentenced to a concurrent term of imprisonment on the Suffolk County conviction of from 5 to 15 years. Defendant thereafter appealed both convictions.
*19 Subsequently, the Appellate Division reversed the Nassau County Court conviction, holding that defendant’s station house statements were unconstitutionally obtained in violation of his right to counsel and remanded the case for a new trial. (70 AD2d 886.) Defendant’s Suffolk County conviction was subsequently reversed as a matter of discretion in the interest of justice. (72 AD2d 751.)
Upon remand of the Nassau County murder charge, the People served defendant with a written notice (CPL 710.30) of their intent to offer in evidence at trial defendant’s November 17, 1976 Question and Answer (Q and A) statement and his sworn testimony at Thompson’s Nassau and Suffolk County trials. Defendant moved to suppress and preclude those statements, raising several grounds: (1) that the statements in question were an integral part of the plea which was vacated by the Appellate Division and the failure to suppress them would constitute a violation of his right against self incrimination and the rule of People v Spitaleri (9 NY2d 168); (2) that the statements were impelled by the erroneous refusal of the County Court to suppress defendant’s previously unlawfully obtained prearraignment confessions; (3) that the statements were the fruit of the poisonous tree; and (4) that the statements were involuntarily made in that they resulted from promises of reduction of charges and sentences.
The motion was denied on May 22,1980 and, thereafter, defendant pleaded guilty a second time to manslaughter in the first degree and robbery in the first degree, and sentence of the same length as the original term was imposed.
On appeal, the Appellate Division reversed defendant’s second Nassau County Court conviction, concluding that defendant’s Q and A statement and his testimony in the Thompson trials were the impermissible fruit of the original station house statements. (85 AD2d 740.) We disagree.
We commence our analysis by noting the circumstances which attended defendant’s November 17, 1976 Q and A statement and plea bargain. The plea minutes disclose that the defendant had consulted with his attorney and that he gave the statement willingly; his attorney was present and participated in the transcription of the Q and A statement. *20 Defendant further agreed to testify at the two trials of Thompson; there was a full colloquy between the court and defendant as to the factual elements of the service station robbery and murder and defendant’s participation in it as well as to the consequences of his plea; defendant stated that his plea was not the result of forcé, threats, pressure or persuasion and that he had discussed all the facts and circumstances, possible defenses, and his legal and constitutional rights with his attorney, and that there had been no “conversations, commitments, promises, assurances or anything * * * said” other than what had been indicated on the record; the court concluded that the plea was voluntary and made by defendant of his own free will.
Defendant in the Appellate Division successfully argued that the Q and A statement and his testimony at the Thompson trials were impelled by the prospect of the imminent use of his prior unconstitutionally obtained station house confessions and were thus the fruit of a poisonous tree. In support of his argument, he cited the holding of the Supreme Court of the United States in Harrison v United States (392 US 219). In that case on the defendant’s first trial, when the People introduced defendant’s three pretrial confessions, he took the witness stand to explain and in part to refute those confessions. On appeal after conviction, defendant’s pretrial confessions were held to have been unconstitutionally obtained and his conviction was reversed. At the second trial, the prosecutor read the defendant’s prior testimony. On appeal from the affirmance of the defendant’s second conviction, the Supreme Court reversed, holding that the defendant’s testimony at his first trial was inadmissible on his second trial because it was the fruit of the illegally procured initial confessions.
By contrast, in this case, while the illegally obtained station house confessions preceded the Q and A statement and the Thompson trial testimony in point of time, the interposing of a voluntary guilty plea, based upon the defendant’s assessment of the case, provided insulating attenuation to the illegally procured initial statement by severing the causal link between the predicate illegal activity and defendant’s decision to incriminate himself. *21 There can be little doubt that the plea bargain was voluntarily negotiated and concluded by defendant on advice of his counsel and by it he obtained the considerable independent advantage of a reduced plea and sentence in the event that his first conviction was not overturned for error in the denial of suppression of the station house confessions. However, the fact that his first conviction was thereafter reversed did not negate this independent, bargained-for advantage. In effect, defendant had hedged his position; he stood to gain either by a reversal of his conviction, or, if not, by conviction of a lesser crime.
Under these circumstances, we believe that the connection between defendant’s original unconstitutionally procured station house confessions and the voluntary preplea incriminating statement made by him to the prosecutor, as well as the testimony given at the Thompson trials, was not so direct or unbroken as to require suppression of this evidence as fruit of a poisonous tree. The same conclusion has been reached by other courts. (Cf. United States v Ceccolini, 435 US 268; United States v Davis, 617 F2d 677; United States v Stevens, 612 F2d 1226; United States v Hoffman, 385 F2d 501.)
We turn now to defendant’s contention that our decision in People v Spitaleri (9 NY2d 168, supra) precludes the People from using his Q and A statement or his testimony at the two Thompson trials.[1] In People v Spitaleri (supra), this court held that evidence of a defendant’s guilty plea *22 could not be introduced at his criminal trial after that plea had been withdrawn and a plea of not guilty entered in its place. A similar decision had previously been reached by the United States Supreme Court in Kercheval v United States (274 US 220). While acknowledging that the plea was probative evidence of defendant’s guilt, as are all admissions, it was reasoned that it would be unfair to allow a defendant to withdraw a plea of guilty and then permit its use against him at trial. Such a rule, the court held, would make the court’s original decision to allow withdrawal of the plea meaningless. Spitaleri rested entirely on fairness grounds and was in no way constitutionally or statutorily compelled.
. In this case, the District Attorney does not seek to use defendant’s vacáted plea against him. Instead, the People seek to use defendant’s preplea factual admissions of the crimes charged made to the prosecutor and the subsequent testimony (six months later) he gave at the Thompson trials, all of which he made with the advice and in the presence of his attorney. Nevertheless, defendant contends that considerations of fundamental fairness require that we extend Spitaleri to suppress his preplea statement and postplea testimony, along with his plea. We disagree.
Defendant was indicted on two counts of murder in the second degree and one count of robbery. If convicted after a trial, he faced a possible sentence of life imprisonment. Consequently, after the motion to suppress his station house confession was denied, defendant, after consultation with counsel, sought to plea bargain with the prosecutor for a reduced charge. After an extended conference, the prosecutor agreed, provided that defendant gave a complete account of the crimes charged to demonstrate that he was sincere in his desire to co-operate. In the presence of his attorney, defendant agreed and acknowledged that his answers to the questions asked.of him would be completely voluntary. Thereupon, defendant, still in the presence and with the advice of his attorney, gave a complete account of the crimes for which he was indicted. In addition, defen *23 dant agreed to testify against his codefendant at his subsequent trials. Later that same day, defendant, his attorney and the prosecutor appeared in Nassau County Court and the recommended plea to the lesser charge of manslaughter, first degree, and robbery, first degree, was formally entered and accepted. Subsequently, defendant was allowed to plead to lesser charges with respect to another robbery committed in Suffolk County.
Although fully aware that the Q and A statement and testimony at the Thompson trials would be tantamount to admissions inculpating him in the robberies and murder, neither defendant nor his attorney expressed as a condition of the pleas that statements made pursuant thereto could be withdrawn upon a successful appeal of his motion to suppress statements made at the time of his arrest. The record is entirely devoid of any such condition to the plea bargain. Defendant, therefore, by agreeing to enter an unconditional plea when it would have been a simple task to include such a limiting condition as part of that plea, assumed the risk that the challenged evidence might be used against him if he succeeded on his appeal to have his original station house confession suppressed.[2] By doing so, he cannot now be heard to say that principles of fairness require us to insert such a condition into the agreement after both parties have fully complied with the terms thereof. To adopt such a rule would do irreparable damage to the integrity of the plea bargaining process.
We are not faced with the situation where the prosecutor failed to honor the terms of the plea agreement, thus requiring exclusion of inculpating statements in order to protect the integrity of the plea bargain, as was the case in *24 People v McConnell (49 NY2d 340) and People v Smith (94 Misc 2d 384). Here, on the other hand, the prosecutor and the court fully honored the terms of the plea agreement and, thus, those cases are inapplicable. It is important to note that as a result of the plea agreement, defendant, rather than face a possible sentence of life imprisonment, received a greatly reduced sentence of 6 to 18 years. Under these circumstances, allowing defendant, who received the full benefit of his agreement, to unilaterally inject a new condition into that agreement, permitting retroactive retraction of his testimony thereunder, would unjustifiably deprive the District Attorney, and in turn the public, of the benefits of a fairly negotiated agreement. Because our decision in Spitaleri does not rest on constitutional or statutory grounds, we believe that it is unnecessary and undesirable to reach out and suppress the challenged evidence of guilt on the basis of that decision. By refusing to extend the Spitaleri doctrine to the facts of this case, we would hold that each party to the voluntarily entered-into plea agreement is entitled to the benefits emanating from the agreement which cannot be retroactively vitiated. To hold otherwise would make a mockery of the plea bargaining process. (Cf. People v McConnell, 49 NY2d 340, supra.)
Furthermore, we believe, as a matter of policy, that the principles espoused in People v Spitaleri (9 NY2d 168, supra) with respect to fundamental fairness do not apply to the situation before us. What is so unfair here? Defendant had the opportunity, if he so desired, to express as a condition of his pleas that none of his statements and future testimony would be used against him if he succeeded on his appeal of the original suppression ruling. This was entirely within his control. However, after consulting his attorney, he did not even attempt to so condition his plea. Under these circumstances, we do not believe that considerations of fundamental fairness require suppression of the challenged evidence. On the contrary, it would be fundamentally unfair to the prosecution, and in turn the public, to rewrite the parties’ agreement after the fact to include this condition which defendant could have but did not include.
*25 Exclusion of evidence of defendant’s guilty plea provides all the protection necessary to assure that the court’s decision to allow defendant to withdraw that plea is a meaningful one as required by Spitaleri. Providing an additional ground for exclusion of probative evidence serves only to denigrate the plea bargaining process and deprives a Judge or jury of evidence which is important to the truth-finding process.
In sum, suppression of the evidence challenged in this case is neither constitutionally nor statutorily required. We hold, therefore, that the integrity of the plea bargaining process, as well as balanced fundamental fairness, require that Spitaleri not be extended to suppress either defendant’s Q & A statement or his testimony on the Thompson trials.
Accordingly, the order of the Appellate Division should be reversed and the case remitted to the Appellate Division, Second Department, for determination of the facts. (CPL 470.25, subd 2, par [d]; 470.40, subd 2, par [b].)

. There first is some procedural underbrush to be cleared.
The Spitaleri-Kercheval doctrine has not been regarded as of constitutional dimension. In the former case, we expressly declined to place it on a constitutional footing (9 NY2d 168, 173, supra), and no case has been cited in which the Supreme Court has placed the Federal counterpart rule on a constitutional premise. In this circumstance, we would normally hold that defendant had forfeited his right to advance a contention based on a nonconstitutional, evidentiary ground on appeal in consequence of his having pleaded guilty the second time (cf. People v Di Raffaele, 55 NY2d 234, 240; People v Thomas, 53 NY2d 338). Where, as here, a defendant has admitted commission of the crime with which he has been charged, his plea normally renders irrelevant any consideration of a contention that his conviction should be reversed for evidentiary error.
CPL 710.70 (subd 2), however, prescribes an exception to the general rule: “An order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty.” Accordingly, defendant here may claim the benefit of that provision. On a subsidiary level, any contention on the part of the People that the Spitaleri rule is not among the grounds on which suppression may be sought under the statute (CPL 710.20), and thus would fall outside the scope of CPL 710.70 (subd 2), had not been preserved for our review inasmuch as there is no indication in the record or *22 assertion in the briefs that this objection was raised by the People on the suppression motion.

. Defendant, at oral argument, indicated that the omission from the plea agreement of a provision prohibiting defendant from appealing the denial of his original suppression motion is somehow relevant. We disagree. If the defendant wished to prevent future use of the challenged evidence, it was incumbent upon him to structure the plea agreement accordingly. Because defendant failed to do this, the District Attorney had no reason to condition the plea on defendant agreeing not to appeal the suppression ruling. Indeed, if defendant had requested the additional benefit of prohibiting the District Attorney from using his subsequent Q & A statement and testimony against him in the future, the District Attorney might then have had reason to require, in return, that defendant waive his right to appeal the suppression ruling. As the agreement stood, the District Attorney had no reason or obligation to impose such a requirement.