[No. D014227. Fourth Dist., Div. One. Sept. 25, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD JOSEPH PACCHIOLI, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II and III.

**COUNSEL**

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, M. Howard Wayne and Kyle Niki Cox, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HUFFMAN, J.**—Richard Joseph Pacchioli appeals from the judgments of two separate drug convictions and enhancements, and the four-year, eight-month prison term imposed for them. He contends the trial court improperly denied his Penal Code[2] section 1538.5 motions to suppress evidence in each case, improperly denied his motion to discover the confidential informant in the second case, and improperly imposed a sentence which violates the double-the-base-term limitation of section 1170.1, subdivision (g). Pacchioli also complains that during the trial of the first case, he was deterred from testifying because of an erroneous evidentiary ruling by the trial court and was prejudicially harmed by prosecutorial misconduct during the closing arguments. As explained below, we affirm.

### PROCEDURAL BACKGROUND AND SUMMARY[3]

Pacchioli was originally charged by information in San Diego Superior Court case number CRN16862 with the possession and the possession for sale of methamphetamine (meth) (Health & Saf. Code, §§ 11377, subd. (a), 11378) stemming from the drugs found in the search of his property on September 19, 1989. He was also alleged to be personally armed with a firearm at the time of the search. (§ 12022, subd. (b).)

While he was released on bail pending further proceedings in CRN16862, another search of his property on December 19, 1989, revealed more meth and weapons, triggering the filing of another information (in San Diego Super. Ct. case No. CRN17688) charging him with the possession for sale of those drugs and enhancement allegations for use of a firearm and for committing the charged offense while released from custody on bail (§ 12022.1).

On May 25, 1990, Pacchioli pleaded guilty in both cases, admitting two counts of possession of meth for sale and the section 12022.1 allegation. In exchange for his plea, all other charges were dismissed, including a separately pending misdemeanor case against him and all charges in CRN16862 against his girlfriend Mary Keim.

On July 17, 1990, Pacchioli was allowed to withdraw his guilty pleas, and the matters were set for motions and trial.

---

[2]All statutory references are to the Penal Code unless otherwise specified.

[3]Because Pacchioli basically raises fact-specific issues and does not challenge the sufficiency of the evidence to support his convictions, we summarize the procedural facts in this section and elaborate on the pertinent facts relevant to each issue in the discussion of that issue.

On August 8 and 15, 1990, San Diego Superior Court Judge Charles R. Hayes heard Pacchioli's motions to change attorneys under *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], to suppress evidence under section 1538.5 in each case, to discover the identity of the confidential informant in CRN17688, and to dismiss the firearm allegation in CRN16862 pursuant to section 995. All motions, except the motion to dismiss, which was granted, were denied. It was determined each case would be tried separately, with one to follow the other.

On September 4, 1990, trial on CRN16862 began before San Diego Superior Court Judge Raymond F. Zvetina. After rulings on *in limine* motions, the prosecution presented its case through the testimony of San Diego County Deputy Sheriff James Pollard, who executed a search warrant at Pacchioli's residence on September 19, 1989. Pollard testified as to items found during the search which showed Pacchioli had "dominion and control" of the house and which revealed he had more than 22.6 grams of meth, an arsenal of weapons and a large sum of money in his personal safe in his bedroom.

On cross-examination, Pollard conceded some meth was found next to Keim's open purse and one or two of the firearms found in the safe were considered valuable collector items. Pollard opined from the amount of meth that it was possessed for sale; it was equal to numerous doses of meth, or to the three-week supply of a very heavy user. Pollard stated Pacchioli was arrested in the presence of Keim at his house on October 19, 1989. At that time, only marijuana in plain sight was seized.

Thereafter, the parties stipulated Pacchioli's girlfriend Keim was a co-defendant in the case who had not shown up for trial[4] and the meth found in the safe at Pacchioli's home was 92 percent strength and weighed 22.6 grams. All the prosecution exhibits were entered into evidence without objection.

After the prosecution rested its case, the court denied Pacchioli's motion for acquittal under section 1118 and he began his defense. Because the trial court ruled the prosecution would be able to impeach him with a statement he used meth (which he made during a probation interview after his initial guilty plea before it was withdrawn), on the advice of counsel, Pacchioli did not testify.

Rather, John Alden Fulkerson, a man who worked for Pacchioli on his property and who, at the time of this first offense, lived in the loft above the

---

[4]As not to prejudice Pacchioli, the court accepted the stipulation and later instructed the jury no consciousness of guilt could be attributed to Pacchioli by Keim's absence at trial.

garage on Pacchioli's property, testified for the defense. Fulkerson had been present with Pacchioli's girlfriend Keim on the property when the search was executed. He stated Keim was unemployed and he had seen her use drugs several times previously by inhaling powdered meth or crystal into her nose through a straw. Pacchioli's defense was that the drugs found during the search of his property were Keim's, not his.

After hearing closing arguments and jury instructions, the jury deliberated and returned a guilty verdict finding Pacchioli had possessed meth for sale.

Before the trial in CRN17668 could commence, Pacchioli again pleaded guilty in that case to possessing meth for sale and admitted he had committed the offense while he was released from custody on bail within the meaning of section 12022.1. Both cases were then set for sentencing.

After various continuances for diagnostic studies, Pacchioli was sentenced to prison for four years. That sentence was corrected on February 4, 1991, to run the terms imposed in each case consecutively rather than concurrently, making Pacchioli's total term four years and eight months.

Pacchioli has timely appealed from both judgments.

DISCUSSION

I-III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

*Admissibility of Earlier Statements*

Pacchioli's initial guilty plea in CRN16862 was withdrawn on July 17, 1990. During *in limine* motions, Pacchioli moved the court to determine the admissibility of his statements made in a sentencing interview with a probation officer before his guilty plea was withdrawn should he choose to testify during trial. The court made a preliminary ruling that the fact of his guilty plea and the statements made to the probation officer could not be used in the prosecutor's case-in-chief, but deferred ruling on the admissibility of those statements for impeachment purposes.

After ruling on other *in limine* matters, the court again reviewed the use of the statements and tentatively ruled it would exclude them for all purposes.

---

*See footnote, *ante,* page 1331.

However, in doing so, the court outlined its concerns about existing case law and questioned whether the statements were made in a Fifth Amendment situation such as that in *Ramona R. v. Superior Court* (1985) 37 Cal.3d 802 [210 Cal.Rptr. 204, 693 P.2d 789], which would preclude their use altogether or whether they could somehow be used for impeachment purposes.

Then, after the prosecution's sole witness testified and was cross-examined, the court again brought up the subject of the use of Pacchioli's statements to the probation officer. The trial judge noted his long and difficult struggle over the issue, and stated:

"I'm persuaded that the broad general rule of the *Harrington* [*People v. Harrington* (1970) 2 Cal.3d 991 (88 Cal.Rptr. 161, 471 P.2d 961)] case, which was decided in 1970, regarding the inadmissibility of statements to a probation officer will, when it is subjected to a Proposition 8 analysis, as was the *Miranda* [*Miranda v. Arizona* (1966) 384 U.S. 436 (16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974)] rule in *People v. May* [(1988) 44 Cal.3d 309 (243 Cal.Rptr. 369, 748 P.2d 307)], be qualified to permit the use of such statements to impeach where the defendant testifies contrary to his prior statement. [¶] The policy served by the *Harrington* rule and *Miranda* are similar, and all are related to Fifth and Sixth Amendment rights. What gave me the greatest pause was the case of *Ramona R.*, [*supra*, 37 Cal.3d 802,] because there, somewhat similarly to this case, there was involved a statement to a probation officer. But I'm mindful that Proposition 8 says all relevant evidence is admissible unless there is a statutory rule of evidence regarding—or constitutional rule of evidence regarding privilege [t]hat applies. [¶] In *Ramona R.* the court said there was a legislatively compelled self-incriminatory statement or testimony involved, and they found that in the statutory scheme, making certain cases like murder create a rebuttable presumption that a juvenile was unfit for juvenile treatment. And the court reasoned that that effectively compelled testimony. And where you have effectively a legislative compulsion to testify you must constitutionally have use immunity co-extensive with the compelled testimony. [¶] Thus the court there reached the conclusion that you had a statutory rule of evidence regarding privilege involved in that case because they said Evidence Code section 940 incorporates the law of self-incrimination, including that previously alluded to principle. [¶] I don't believe that the present circumstances can be stretched to constitute a legislatively compelled self-incriminatory situation. We don't have here a pretrial interview by a probation officer as was involved in *Ramona R.*, and we don't have a rebuttable presumption. Rather what we have is a meeting with a probation officer that doesn't even occur until the defendant has entered a plea of guilty, which must have a factual basis. I can't imagine a greater waiver of Fifth Amendment rights

against self-incrimination than the plea of guilt which has to precede this interview with the probation officer. [¶] So we have quite a different situation. The defendant, as I say, has already pled guilty with a factual basis. And what he's meeting with the probation officer for, among other things, is to flesh out factually the plea which he's already made in open court, and with the advice of counsel. [¶] So to the extent that the *Alesi* [*People* v. *Alesi* (1967) 67 Cal.2d 856 (64 Cal.Rptr. 104, 434 P.2d 360)] case stands as an exception to the *Harrington* rule because of the intimate involvement of counsel, I would indicate that I don't really see any great distinction because counsel has been involved in the very plea of guilt which sent this man to the probation department, and presumably advised him before going to the probation department. I don't see why there should be some magic in the attorney[]s going to the probation department with the defendant for the probation interview as opposed to sending his client to the probation department. [¶] To the extent that *Harrington* has any continued vitality after Proposition 8, at least insofar as impeachment use is concerned, I would say that this impresses me as a situation where there is an exception, and also is a situation where, as I say, there is no statutory rule of evidence regarding privilege that would shield the impeachment use. And thus I would say in the event that the defendant should testify to the contrary of what he told the probation officer, that may be used for impeachment, assuming, of course, that all other requirements of the use of any statement of the defendant are met by the prosecution. [¶] That will be the ruling of the court."

Pacchioli's counsel then asked the court about whether Pacchioli would be allowed to take the stand and skirt the issue of controlled substances, i.e., not say anything about the ownership of the drugs found in his safe. After further review, and a chambers conference, the court stated for the record that based on *People* v. *Teshara* (1904) 141 Cal. 633 [75 P. 338] and *People* v. *James* (1976) 56 Cal.App.3d 876, 887-888 [128 Cal.Rptr. 733], "if the thrust of the defendant's testimony was explicitly or implicitly a denial that the drugs were his, [it] would consider that to be grounds for impeachment by the contrary statement to the probation officer." Because of the facts in this case, it was the court's belief that, "short of [Pacchioli's] acknowledging possession or ownership of the drugs in question, . . . that that was an implicit denial of the charges and therefore would . . . trigger the prosecution's right to use the impeaching evidence." The court also noted for the record that the prosecutor had made an offer to sanitize the statement to delete any mention of it having been made to a probation officer if Pacchioli chose to testify.

After the prosecution rested its case, and the court denied a defense motion to dismiss all charges under section 1118, defense counsel stated

Pacchioli would not testify in his defense based on the court's earlier evidentiary ruling concerning the statements to the probation officer.

. ■ On appeal, Pacchioli does not contend his Fifth Amendment right against self-incrimination was violated by the trial court's evidentiary ruling, but rather contends the ruling was violative of his constitutional due process rights under the Fourteenth Amendment. He bases this assertion on the withdrawal of his earlier guilty plea and the requirement the status quo ante be restored, i.e., that the parties are placed by the law in the position each had before entering into the contract. (See *In re Sutherland* (1972) 6 Cal.3d 666, 672 [100 Cal.Rptr. 129, 493 P.2d 857].) Because the process of accepting, implementing and withdrawing plea bargains is governed by due process (*People* v. *Mancheno* (1982) 32 Cal.3d 855, 860 [187 Cal.Rptr. 441, 654 P.2d 211]), Pacchioli argues the ruling, by failing to treat him as if he had never talked with the probation officer, violated his rights to a fair trial by returning him, but not the prosecution, to the status quo ante, thereby chilling his right to testify on his own behalf, which is guaranteed by the federal and California Constitutions. (*Rock* v. *Arkansas* (1987) 483 U.S. 44, 51-53 [97 L.Ed.2d 37, 107 S.Ct. 2704]; *People* v. *Robles* (1970) 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710].)

In further support of his due process argument, Pacchioli relies upon *People* v. *Hicks* (1971) 4 Cal.3d 757 [94 Cal.Rptr. 393, 484 P.2d 65] and *People* v. *Harrington* (1970) 2 Cal.3d 991 [88 Cal.Rptr. 161, 471 P.2d 961] which reaffirmed the holding of *People* v. *Quinn* (1964) 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 705] that "admissions made to a probation officer in the hope that candor will persuade the probation officer to make a favorable report to the court are not admissible either for substantive evidence or for impeachment in any retrial on the same issues." (*People* v. *Harrington, supra,* 2 Cal.3d at p. 999; *People* v. *Hicks, supra,* 4 Cal.3d at pp. 762-763.) Pacchioli argues the policy considerations behind the holdings of these cases in favor of "free and unfettered communication between a defendant and the probation authorities" (*People* v. *Hicks, supra,* 4 Cal.3d at p. 763) are consistent with his due process claim. Thus he asserts it would be fundamentally unfair to encourage his candor and then use his candid statements against him at his subsequent trial.

Pacchioli's arguments, while claiming to be based only upon due process claims, shade softly into the Fifth Amendment arena. We therefore examine the interplay of both in the area of evidentiary exclusionary rules before concluding Pacchioli was denied neither due process nor a fair trial.

Initially we note the parties and the court below were fully aware that California law, even before Proposition 8, recognized an exception to the

*Harrington* and *Hicks* rules of exclusion for statements made by a defendant to his probation officer under the "guiding hand of counsel, which were volunteered without asserting a claim of privilege or confidentiality at the time they were made. (*People* v. *Alesi* (1967) 67 Cal.2d 856, 858-861 [64 Cal.Rptr. 104, 434 P.2d 360], as limited by *People* v. *Harrington, supra*, 2 Cal.3d at p. 1000.) Pacchioli, however, disputes he made the statements about his personal drug use to the probation officer under the "guiding hand of counsel." As the law in California since the enactment of Proposition 8 has followed the federal standards for the admissibility or exclusion of evidence in criminal trials, and such is dispositive in this case, we need not resolve this question.

■    Returning to Pacchioli's premise he was denied due process by the trial court's ruling his statements to the probation officer could be used to impeach him if he testified, we note the effect of Proposition 8, adopted in 1982, which added article I, section 28 to the California Constitution, was to abrogate judicial exclusionary rules based upon the self-incrimination privilege, except where the exclusion of evidence was required by the United States Constitution. (*People* v. *May* (1988) 44 Cal.3d 309, 319.) Because the federal rule, as set out in *Harris* v. *New York* (1971) 401 U.S. 222 [28 L.Ed.2d 1, 91 S.Ct. 643], provides that statements made to police under circumstances rendering them inadmissible under *Miranda* on the prosecution's case-in-chief can be admitted for purposes of impeachment of a testifying defendant whose trial testimony conflicts with earlier statements, our Supreme Court, in *People* v. *May, supra*, 44 Cal.3d at page 319, held "no privilege, statutory or otherwise," protects a defendant from such impeachment in a case where extrajudicial statements are made in violation of the defendant's constitutional rights against self-incrimination and the right to counsel. (*Id.* at pp. 315-316, 319.) ■    The court in *May* specifically noted in reference to any violation of other constitutional rights, "[a]s *Harris* explains, 'Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. *But that privilege cannot be construed to include the right to commit perjury.* [Citations.]' " (*Id.* at p. 319 citing *Harris* v. *New York, supra*, 401 U.S. at p. 225 [28 L.Ed.2d at p. 4] and adding italics.)

Moreover, our Supreme Court in *People* v. *Markham* (1989) 49 Cal.3d 63 [260 Cal.Rptr. 273, 775 P.2d 1042],[10] noted, as it did in *May*, that only "legislatively compelled testimony cannot be used against the testifier for

---

[10]*Markham* held the "beyond a reasonable doubt standard of proof" previously required under *People* v. *Jimenez* (1978) 21 Cal.3d 595, 605 [147 Cal.Rptr. 172, 580 P.2d 672] for determining whether the exclusion of confessions and admissions otherwise admissible must be compelled in a criminal case no longer applied and the federal standard of "by a

any purpose under the federal Constitution. (See *New Jersey* v. *Portash* (1979) 440 U.S. 450, 458-459 . . .)" (*People* v. *Markham, supra,* 49 Cal.3d at pp. 68-69.)

Based on Proposition 8, *May* and federal law, *People* v. *Goodner* (1992) 7 Cal.App.4th 1324 [9 Cal.Rptr.2d 543] recently determined the statements of a defendant made in a probation report were admissible in a subsequent trial to prove the nature of a prior conviction, holding they were not legislatively compelled. (*Id.* at p. 1332.) The court in *Goodner* also concluded "Evidence Code section 940 does not preserve the judicially created exclusionary rule set forth in *Hicks,* [*supra,* 4 Cal.3d 757], in light of both the holding in *Minnesota* v. *Murphy* [1984] 465 U.S. 420 [79 L.Ed.2d 409, 104 S.Ct. 1136][11] and in light of the intent of the California voters to dispense with exclusionary rules that federal law does not absolutely compel." (*People* v. *Goodner, supra,* at p. 1332.)

We agree with *Goodner* a defendant's statements made to a probation officer during a presentence interview in hopes of obtaining a more favorable disposition are not compelled absent some showing the statements were legislatively mandated or otherwise involuntarily made. Here Pacchioli has made no such showing. Thus applying the rules of law set out in *Harris,* and acknowledged in *May* and *Markham,* we conclude Pacchioli's Fifth Amendment rights were not violated under the circumstances of this case.

The issue then becomes whether Pacchioli's statements, which were not legislatively compelled and which under Proposition 8 and federal law would be admissible for impeachment purposes, should have been excluded because Pacchioli was allowed to withdraw his plea, thereby placing him in the position of being once again an innocent person charged with a crime. Pacchioli claims the trial court's ruling was fundamentally unfair because it

---

preponderance of the evidence" controlled such determinations since the passage of Proposition 8. (*People* v. *Markham, supra,* 49 Cal.3d at p. 71.)

[11] In *Murphy,* the United States Supreme Court held that a probationary defendant's general obligation to appear and answer questions truthfully did not convert his otherwise voluntary statements into compelled statements. (*Minnesota* v. *Murphy* (1984) 465 U.S. 420 at pp. 429-430 [79 L.Ed.2d at pp. 429-421, 104 S.Ct. 1136].) The defendant in *Murphy* was not advised of his privilege against self-incrimination and he was threatened by the probation officer that his probation would be revoked if he lied. (*Id.* at pp. 431-435 [79 L.Ed.2d at pp. 421-425].) The court specifically stated, "that since Murphy revealed incriminating information instead of timely asserting his Fifth Amendment privilege, his disclosures were not compelled incriminations. Because he had not been compelled to incriminate himself, Murphy could not successfully invoke the privilege to prevent the information he volunteered to his probation officer from being used against him in a criminal prosecution." (*Id.* at p. 440 [79 L.Ed.2d at p. 428].) The court reasoned the admonition Murphy answer truthfully proscribed only false statements, it did not prohibit him from invoking his Fifth Amendment rights, and there was no threat made his probation would be revoked if he chose to remain silent.

placed him in the position he was in before his plea, but placed the prosecution in a position to use information obtained after the plea.

We find Pacchioli's situation not unlike that of the probationer who commits a crime and has his probation revocation hearing before his trial on the new offense which triggered the revocation. Under those circumstances "there is the policy of maintaining ' "a fair state-individual balance" ' at the subsequent criminal trial ' "by requiring the government . . . in its contest with the individual to shoulder the entire load." ' [Citations.] Together with the demands of due process that an accused be presumed innocent and that his guilt be established beyond a reasonable doubt [citations], the privilege against self-incrimination requires the prosecution in a criminal trial to produce sufficient evidence to establish the defendant's guilt *before* he must decide whether to remain silent or to testify in his own behalf. [Citations.]" (*People* v. *Coleman* (1975) 13 Cal.3d 867, 875-876 [120 Cal.Rptr. 384, 533 P.2d 1024], original italics, fns. omitted.)

In *People* v. *Coleman, supra,* 13 Cal.3d 867, our Supreme Court recognized the tension often created between competing constitutional rights in criminal proceedings and noted federal law requires only the most rudimentary, rather than the most reasonable, procedures to ensure fundamental fairness to a defendant. (*Id.* at pp. 875-889.) In resolving the countervailing constitutional rights in that case, the court in *Coleman* fashioned a judicial rule of evidence allowing, on timely objection, the exclusion of any statements made at the revocation hearing from being used as evidence in the case-in-chief at the trial of the new offense, but not permitting exclusion if the defendant's testimony at the revocation hearing was "clearly inconsistent" with his testimony on direct examination at the trial. (*Id.* at p. 889.) This rule ensured the defendant's due process rights by requiring the prosecution to prove the defendant's guilt through evidence obtained by its own lawful investigative efforts, and not by that obtained from the mouth of the defendant himself. (*Id.* at p. 892.)

Although the trial court here, in determining Pacchioli's statements would be admissible for impeachment purposes should he testify, did not discuss *Coleman,* which by its language was specifically limited to probation revocations, its ruling complies with *Coleman*'s exclusionary rule, and in turn comports with the federal rule based on *Harris,* discussed above. We thus cannot say that the trial court's ruling was erroneous or that Pacchioli was denied due process or a fair trial.

In so concluding, we do not reach the issue the Attorney General's office would have us determine, whether the *Luce-Collins* (*Luce* v. *United States*

(1984) 469 U.S. 38, 43 [83 L.Ed.2d 443, 105 S.Ct. 460]; *People* v. *Collins* (1986) 42 Cal.3d 378, 385 [228 Cal.Rptr. 899, 722 P.2d 173]) rule[12] should foreclose Pacchioli from complaining about the trial court's ruling on his statements because he did not testify at trial. Suffice it to say, even if we found the trial court's ruling erroneous, it is certainly arguable, as the court in *Collins* found to be the case, any conclusion concerning prejudice in the ruling would be "wholly speculative." (*Id.* at p. 384.)

## DISPOSITION

The judgments are affirmed.

Todd, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied October 16, 1992, and appellant's petition for review by the Supreme Court was denied January 14, 1993.

---

[12]The *Luce-Collins* rule provides: "[T]o raise and preserve for review the claim for improper impeachment with a prior conviction, a defendant must testify." (*Luce* v. *United States, supra,* 469 U.S. at p. 43 [83 L.Ed.2d at p. 448].)