[No. E036402. Fourth Dist., Div. Two. Feb. 17, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
BEBE F. SCHELLER, Defendant and Appellant.

COUNSEL

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda L. Cartwright-Ladendorf and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RICHLI, J.**—Defendant was convicted of possession of methamphetamine for sale (Health & Saf. Code, § 11378), unlawful possession of a firearm (Pen. Code, § 12021, subd. (c)(1)) and unlawful possession of ammunition (Pen. Code, § 12316, subd. (b)). She contends the trial court erred by allowing the prosecution to introduce her statements to a probation officer.

We decline to decide whether such statements are admissible as a general rule. We will hold, however, that defendant's statements were inadmissible as substantive evidence of guilt because defendant made the statements in reliance on a plea bargain, and because she was later allowed to withdraw her guilty plea. This error requires us to reverse defendant's conviction of unlawful possession of a firearm, but not on the other two counts.

I

FACTUAL BACKGROUND

In a consent search of the defendant's hotel room, the police found eight separate containers of methamphetamine, totaling (with packaging) 6.5 grams. They also found two gram scales, almost $2,800 in cash, and a glass methamphetamine pipe. In a tray on a dresser, they found a second glass methamphetamine pipe, two walkie-talkies, one .45-caliber bullet, three nine-millimeter bullets, and one .22-caliber bullet.

The police further found two unloaded handguns—a .45-caliber and a nine-millimeter. They were in zippered gun cases inside a closed briefcase, in a closet area, under some of defendant's clothing. Some bullets and a man's day planner were also found in the briefcase. Some other men's items were found in the room.

## II

## PROCEDURAL BACKGROUND

Defendant was initially charged with possession of methamphetamine for sale (Health & Saf. Code, § 11378), with an enhancement allegation that a principal was armed with a firearm (Pen. Code, § 12022, subd. (a)(1)).

On October 3, 2003, pursuant to a plea bargain, defendant pleaded guilty to possession of methamphetamine for sale. The plea bargain called for the trial court to dismiss the armed-principal enhancement and to place defendant on probation, on conditions including a 270-day jail term.

There was this discussion:

"[DEFENSE COUNSEL]: Just to let the Court know. The allegation that's being dismissed, and this lady[1] indicated that the guns are hers and that they're a family heirloom, and counsel's been nice enough to suggest we refer it to probation so they can verify this. And the Court can make a determination on whether or not they should be returned to her.

"[PROSECUTOR]: That's what I've told her. I don't know if it's true or not. I'd like probation to make—do an investigation on that fact."

The trial court referred the matter to the probation department for a probation report. In that connection, it ordered defendant to "report to probation . . . ." It specifically asked the probation department to address the ownership and appropriate disposition of the guns.

On October 20, 2003, Probation Officer Sonja Leigh interviewed defendant. Defendant did not invoke the Fifth Amendment. In Officer Leigh's opinion, defendant did not have to talk to her about the crime.

On November 7, 2003, by stipulation, defendant withdrew her guilty plea.

At some point, the prosecution learned that defendant had a prior conviction for battery that made it unlawful for her to be in possession of either firearms or ammunition. As a result, on March 25, 2004, a new information was filed, which (as subsequently consolidated with the original information and amended) added new counts of unlawful possession of a firearm (Pen. Code, § 12021, subd. (c)(1)) and unlawful possession of ammunition (Pen.

---

[1] Evidently referring to some person present other than the defendant.

Code, § 12316, subd. (b)), each with an armed-principal enhancement allegation. (Pen. Code, § 12022, subd. (a)(1).)

On March 30, 2004, the prosecution filed a written motion in limine to admit defendant's statements to the probation officer. On June 1, 2004, defendant filed a written motion in limine to exclude these same statements. Also on June 1, 2004, after hearing argument, the trial court ruled the statements admissible.

At trial, Officer Leigh testified that defendant admitted that the police found methamphetamine, scales, cash, two-way radios and handguns in her room. According to Officer Leigh, defendant denied intending to sell drugs. Defendant also denied knowing anything about the 6.5 grams of methamphetamine. She did admit that she used methamphetamine about twice a week and that she had been in possession of less than a gram of methamphetamine, for personal use. She claimed that she had the scales only to weigh drugs when she bought them.

Defendant told Officer Leigh the cash was partly hers and partly her boyfriend's. She was trying to save up for a house or an apartment; she was reluctant to put the money in a bank because it might be seized for child support. She said the two-way radios were for her boyfriend's work. She admitted being in possession of the handguns, explaining that she was cleaning them.

The jury found defendant guilty on all three counts; however, it found the armed-principal enhancements on all three counts to be not true.[2] Defendant was placed on three years' probation, on conditions including a one-year jail term.

## III

## THE ADMISSIBILITY OF DEFENDANT'S STATEMENTS TO THE PROBATION OFFICER

Defendant argues that statements made to a probation officer are inadmissible (except possibly for impeachment). She relies primarily on a long line of cases dealing generally with whether such statements are voluntary. These cases do not state any clear or readily synthesized rule; indeed, it could be argued that they are in conflict. Nevertheless, they turn on three underlying principles: (1) the privilege against self-incrimination; (2) the policy in favor

---

[2] Presumably the jury was not convinced that the guns were "available for offensive or defensive use." (See CALJIC No. 17.16.1.)

of allowing a defendant to speak freely to a probation officer; and (3) the violation of fundamental fairness that results from forcing a defendant to choose between the two.[3]

Defendant also argues, however, that statements made to a probation officer *after a guilty plea* are inadmissible (except possibly for impeachment) *once that guilty plea has been withdrawn.* Moreover, defendant raised this same argument below. This argument is wholly distinct, and it turns on different underlying principles. As discussed *post*, we find it dispositive. Accordingly, we need not consider defendant's arguments concerning the admissibility, in general, of statements made to a probation officer.

█ Defendant's more limited argument is based on two alternative premises. The first is that ordinarily, a guilty plea is inadmissible. (See Evid. Code, § 1153; Pen. Code, §§ 1192.4, 1192.5.) As she notes, this "rule of inadmissibility applies, not merely to admissions of guilt, but also to 'any incidental statements made in the course of plea negotiations . . . .' [Citation.]" (*People v. Crow* (1994) 28 Cal.App.4th 440, 450 [33 Cal.Rptr.2d 624] [Fourth Dist., Div. Two], quoting *People v. Tanner* (1975) 45 Cal.App.3d 345, 350 [119 Cal.Rptr. 407] [Fourth Dist., Div. Two].) In *Tanner*, the defendant made the assertedly inadmissible statements in letters he sent to prosecutors in an effort to induce them to offer him a better plea bargain. (*Tanner*, at pp. 348, 352–353.) In *Crow*, the defendant made the assertedly inadmissible statements to a psychologist, who included them in a psychological evaluation. Defense counsel then sent the psychological evaluation to the prosecutor, in the course of plea negotiations, so the prosecutor could consider whether to make a better offer. (*Crow*, at p. 448.)

Here, however, the plea negotiations were over and done with. Defendant had already entered a plea before she made the statements to the probation officer; thus, these statements were not inadmissible on the theory that they were made in the course of plea negotiations. (See *U.S. v. Lloyd* (8th Cir. 1994) 43 F.3d 1183, 1186 ["once a plea agreement has been reached, statements made thereafter are not entitled to . . . exclusionary protection"] and cases cited.)

---

[3] These cases include *Minnesota v. Murphy* (1984) 465 U.S. 420 [79 L.Ed.2d 409, 104 S.Ct. 1136]; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1 [17 Cal.Rptr.3d 710, 96 P.3d 30]; *People v. Macias* (1997) 16 Cal.4th 739 [66 Cal.Rptr.2d 659, 941 P.2d 838]; *Ramona R. v. Superior Court* (1985) 37 Cal.3d 802 [210 Cal.Rptr. 204, 693 P.2d 789]; *People v. Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024]; *People v. Hicks* (1971) 4 Cal.3d 757 [94 Cal.Rptr. 393, 484 P.2d 65]; *People v. Harrington* (1970) 2 Cal.3d 991 [88 Cal.Rptr. 161, 471 P.2d 961]; *People v. Alesi* (1967) 67 Cal.2d 856 [64 Cal.Rptr. 104, 434 P.2d 360]; *People v. Quinn* (1964) 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 705]; and *People v. Goodner* (1992) 7 Cal.App.4th 1324 [9 Cal.Rptr.2d 543].

We find the alternative premise of defendant's argument to be more persuasive. It is, quite simply, this: "Familiar and basic principles of law reinforced by simple justice require that when an accused withdraws his guilty plea the *status quo ante* must be restored. When a plea agreement has been rescinded the parties are placed by the law in the position each had before the contract was entered into. [Citation.]" (*People v. Superior Court (Garcia)* (1982) 131 Cal.App.3d 256, 258 [182 Cal.Rptr. 426], italics added.)

We have not found any California case holding squarely that a defendant's statements to a probation officer after pleading guilty are inadmissible (or admissible, for that matter) once the guilty plea is withdrawn. *People v. Pacchioli* (1992) 9 Cal.App.4th 1331 [12 Cal.Rptr.2d 156], however, comes close. There, after pleading guilty, the defendant made certain statements to a probation officer; later, he was allowed to withdraw his guilty plea. (*Id.* at pp. 1333, 1335.) The trial court excluded the statements as substantive evidence of guilt but ruled that they could be used to impeach the defendant if he took the stand and contradicted his earlier statements. (*Id.* at pp. 1335–1337.)

"On appeal," the court noted, "Pacchioli . . . contends the ruling was violative of his constitutional due process rights under the Fourteenth Amendment. He bases this assertion on the withdrawal of his earlier guilty plea and the requirement the status quo ante be restored, i.e., that the parties are placed by the law in the position each had before entering into the contract. [Citation.]" (*People v. Pacchioli, supra*, 9 Cal.App.4th at p. 1338.) "Pacchioli claims the trial court's ruling was fundamentally unfair because it placed him in the position he was in before his plea, but placed the prosecution in a position to use information obtained after the plea." (*Id.* at pp. 1340–1341.)

The appellate court held that the use of the statements solely for *impeachment*, and *not* as substantive evidence of guilt, did not violate due process. (*People v. Pacchioli, supra*, 9 Cal.App.4th at p. 1341.) It relied on *People v. Coleman, supra*, 13 Cal.3d 867, which had held that a probationer's testimony at a revocation hearing, when offered in a subsequent trial on the same offense that was the basis of the revocation, was inadmissible as substantive evidence, but admissible to impeach. (*Pacchioli*, at p. 1341.) It also relied on *Harris v. New York* (1971) 401 U.S. 222 [28 L.Ed.2d 1, 91 S.Ct. 643], which had held that statements obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602] were admissible to impeach. (*Pacchioli*, at pp. 1339, 1341.)

Accordingly, the court in *Pacchioli* did not actually decide whether the defendant's statements to the probation officer would have been admissible as substantive evidence of guilt. Nevertheless, it would seem that, had the court

believed the statements were admissible for all purposes, it would simply have said so. It did not; rather, it took the defendant's due process claim seriously, though it carved out an exception.

Cases from other jurisdictions have decided the issue *Pacchioli* did not quite reach. For example, in *U.S. v. Ventura-Cruel* (1st Cir. 2003) 356 F.3d 55, after pleading guilty, the defendant wrote a letter to his probation officer admitting the crime. Under his plea agreement, his sentence could be reduced if he accepted responsibility for the crime or if he provided truthful and complete information about it. (*Id.* at p. 62.) After his guilty plea was vacated, the trial court admitted the letter into evidence against him. (*Id.* at p. 63.)

The appellate court held that the admission of the letter was "unfair under the circumstances . . . . Ventura-Cruel believed, with reason, that the court had approved his plea and plea bargain. The plea agreement encouraged Ventura-Cruel to make incriminating statements in order to receive a shorter sentence. In light of these incentives, Ventura-Cruel offered such statements. He was then deprived of the benefit of his plea bargain but the government was permitted to use his statements made in reliance on the bargain against him at his subsequent trial. This was error. The parties should have been returned to their positions before the district court initially accepted Ventura-Cruel's guilty plea . . . . Part of this return to the status quo ante should have included preventing the introduction of Ventura-Cruel's confession at trial." (*U.S. v. Ventura-Cruel, supra*, 356 F.3d at pp. 63–64, fn. omitted.)

Likewise, in *State v. Reutebuch* (1997) 24 Kan.App.2d 658 [953 P.2d 227], after pleading guilty, the defendant made incriminating statements to a court services officer in connection with the latter's presentence investigation report. After she was allowed to withdraw her plea, the trial court granted her motion to suppress the statements. (*Id.* at p. 659.) The state appealed, but the court of appeals upheld the suppression order: "[The defendant] made the statements . . . because she had already pled guilty to the offenses and her Fifth Amendment rights were gone as to the original offense.[4] Without such plea in place, it is unlikely she would have made any such statements. It follows that because the statements were made in connection with the plea, such statements should be suppressed when the plea was withdrawn." (*Ibid.*; see

---

[4] We do not necessarily agree with the court in *Reutebuch* that a defendant who has pleaded guilty but has not yet been sentenced has lost the privilege against self-incrimination. (*People v. Ford* (1988) 45 Cal.3d 431, 436 [247 Cal.Rptr. 121, 754 P.2d 168]; *People v. Fonseca* (1995) 36 Cal.App.4th 631, 635 [42 Cal.Rptr.2d 525]; *People v. Kizzee* (1979) 94 Cal.App.3d 927, 938–939 [156 Cal.Rptr. 784].) Nevertheless, the fact of the guilty plea eliminates almost any *incentive* to assert the privilege. Thus, it is only reasonable to assume that, absent the guilty plea, the defendant would not have made the same self-incriminating statements.

also *State v. Nelson* (2001) 108 Wn.App. 918, 925 [33 P.3d 419]; *State v. Hunt* (Fla.Dist.Ct.App. 1997) 687 So.2d 851; *Allgood v. State* (1987) 309 Md. 58, 74–80 [522 A.2d 917].)

The only case to the contrary of which we are aware is *John v. State* (Alaska Ct.App. 2001) 35 P.3d 53. There, however, the court rejected a similar contention for the sole reason that the defendant had "cited no authority" for it. (*Id.* at p. 63.) As already noted, we have found ample such authority.

We recognize that in *Hutto v. Ross* (1976) 429 U.S. 28 [50 L.Ed.2d 194, 97 S.Ct. 202], the United States Supreme Court held that a defendant's statements to the prosecution—which he made after entering into a plea bargain that was later withdrawn (*id.* at p. 29)—were not "per se inadmissible." (*Id.* at p. 30.) It explained, however, that the statements were not necessarily *involuntary*. (*Ibid.*) The defendant does not seem to have argued that the statements were inadmissible for any reason *other than* that they were involuntary. Accordingly, *Ross* is not controlling here.

We also recognize that the result in this case would probably be different if the plea bargain had expressly provided that the defendant's statements to the probation officer would be admissible against her. (See *U.S. v. Ventura-Cruel, supra,* 356 F.3d at p. 64, fn. 11; see, e.g., *U.S. v. Stirling* (2d Cir. 1978) 571 F.2d 708, 732, cert. den. (1978) 439 U.S. 824 [58 L.Ed.2d 116, 99 S.Ct. 93].) The result might also be different if the record showed that defendant breached or reneged on the plea bargain. (See *Ventura-Cruel,* at p. 63, fn. 10; see, e.g., *U.S. v. Scruggs* (4th Cir. 2004) 356 F.3d 539, 545–546, cert. den. (2004) 541 U.S. 1079 [158 L.Ed.2d 993, 124 S.Ct. 2429].) Finally, the result might be different if, instead of defendant withdrawing her guilty plea, her conviction on the plea had been reversed on appeal. (See *People v. Evans* (1982) 58 N.Y.2d 14, 19, 22–25 [444 N.E.2d 7, 457 N.Y.S.2d 757].)[5] None of these countervailing factors, however, are present here.

At oral argument, the People asserted that the key issue was voluntariness. They noted that defense counsel affirmatively asked that the probation officer inquire into the ownership of the handguns, so they could be returned to their rightful owner; they concluded that defendant's statements—and particularly her statements about the handguns—were voluntary. As we discussed earlier, however, we decline to consider whether defendant's statements to the probation officer were voluntary; we may assume, without deciding, that they were. Rather, the key issue is whether defendant was relying on the plea bargain. Obviously, if she had imagined that she was still exposed to charges

---

[5] And of course, under *Pacchioli,* the statements would be admissible to impeach defendant if she took the stand. (*People v. Pacchioli, supra,* 9 Cal.App.4th at pp. 1335–1337.)

involving possession of a firearm, she would never have asked the probation officer to embark on such an inquiry; certainly she would not have answered questions about what the handguns were doing in her room. It was only because of the plea bargain that defendant thought it was safe to do so.

■ The admission of defendant's statements under these circumstances rises to the level of a violation of due process. "As a general rule, a plea bargain approved by the court is enforceable under contract principles. [Citations.]" (*People v. Renfro* (2004) 125 Cal.App.4th 223, 230 [22 Cal.Rptr.3d 680].) However, "[i]n addition to their contractual qualities, plea agreements also have a constitutional dimension. A criminal defendant's constitutional due process right is implicated by the failure to implement a plea bargain according to its terms. [Citations.]" (*People v. Knox* (2004) 123 Cal.App.4th 1453, 1459 [20 Cal.Rptr.3d 877], citing *People v. Walker* (1991) 54 Cal.3d 1013, 1026 [1 Cal.Rptr.2d 902, 819 P.2d 861].)

A party who rightfully rescinds a contract is entitled to "complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction . . . ." (Civ. Code, § 1692.) "It is the purpose of rescission 'to restore both parties to their former position as far as possible' [citation] and 'to bring about substantial justice by adjusting the equities between the parties' despite the fact that 'the status quo cannot be exactly reproduced.' [Citations.]" (*Runyan v. Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 316 [85 Cal.Rptr. 138, 466 P.2d 682], quoting *Bank of America v. Greenbach* (1950) 98 Cal.App.2d 220, 238 [219 P.2d 814] and *Lobdell v. Miller* (1952) 114 Cal.App.2d 328, 344 [250 P.2d 357].) This entitlement to restitution once a contract is rescinded is as much a contract right as is the entitlement to specific performance or damages once a contract is breached. Thus, in the context of a criminal plea bargain, it is equally protected by due process. (Cf. *Leo v. Superior Court* (1986) 179 Cal.App.3d 274, 283 [225 Cal.Rptr. 15] ["plea bargains are specifically enforced by the courts on *due process* grounds"].)

■ In sum, as a result of the plea bargain, defendant made the statements to her probation officer. Although the statements could not be unmade, the trial court could effectively restore the status quo and bring about substantial justice by excluding them. It follows that allowing the prosecution to use them as substantive evidence against defendant violated due process.

Defendant does not claim that the error was structural or otherwise not subject to harmless error analysis; we therefore consider any such contention waived. Instead, because the error implicates due process, we apply the federal "beyond a reasonable doubt" standard. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].)

With one exception, discussed *post*, all of defendant's statements to the probation officer were emphatically exculpatory. Although she did admit using drugs, the fact that some drugs and a methamphetamine pipe were found in her bed made it almost impossible for her to deny this. Moreover, she had to say this to support her claim that she had no intent to sell and that she was unaware of the presence of methamphetamine in a quantity suitable for sale rather than personal use.

Defendant's only truly inculpatory statement was her admission that she knew that the handguns were there. Without that admission, the evidence that she was aware of the presence of the handguns was weak. Admittedly, they were found in her hotel room. However, unlike the drugs, scales, two-way radios, etc., they were in zippered cases, which in turn were in a briefcase, which in turn was in a closet. Moreover, the paperwork in the briefcase suggested that they belonged to defendant's boyfriend, not to defendant. At most, the prosecution could argue that, because .45-caliber and nine-millimeter bullets were out on a tray, in plain sight, it is inferable that defendant knew that .45-caliber and nine-millimeter handguns were in the closet. The defense, however, could argue that bullets are not automatically accompanied by guns; for example, .22-caliber bullets were also found out in plain sight, yet no .22-caliber firearm was found. Thus, the admission of defendant's statements to the probation officer made it significantly more likely that the jury would find that defendant was in knowing possession of the handguns.

Even so, the only part of the verdict that could have been affected was the conviction on count 2, unlawful possession of a firearm. Count 1, possession of methamphetamine for sale, did not involve knowledge of the presence of the handguns. There was ample other evidence of intent to sell, including the amount of the methamphetamine, the amount of the cash, and the presence of multiple scales. Likewise, count 3, unlawful possession of ammunition, did not turn on knowledge of the presence of the handguns; the jury presumably found defendant guilty on this count based on the bullets that were out on the tray, rather than the bullets in the briefcase. And finally, the jury found that the armed-principal enhancements on all counts were *not* true.

In sum, with respect to count 1 and count 3, the error was harmless beyond a reasonable doubt. We cannot say the same with respect to count 2. Accordingly, we will reverse the conviction on count 2 but not the convictions on count 1 and count 3.

## IV

## DISPOSITION

The judgment, solely with respect to the conviction on count 2 and the resulting sentence, is reversed.

The People may retry defendant on count 2. If, however, the People fail to bring defendant to a new trial within the applicable time limit (see Pen. Code, § 1382, subd. (a)(2)), or if the People elect, in a writing filed in the trial court, not to retry defendant, our remittitur shall be deemed to modify the verdict by striking the conviction on this count, and the trial court shall resentence defendant. (See *People v. Jones* (1997) 58 Cal.App.4th 693, 720 [68 Cal.Rptr.2d 506] [Fourth Dist., Div. Two], and cases cited.)

Ramirez, P. J., and McKinster, J., concurred.

A petition for a rehearing was denied March 16, 2006, and the opinion was modified to read as printed above.