[Crim, No. 14090. In Bank. July 30, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBIE HARRINGTON et al., Defendants and Appellants.

**COUNSEL**

Morris Lavine for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**McCOMB, J.**—Defendants were charged by information with possession of marijuana for sale (Health & Saf. Code, § 11530.5). They appeal from judgments of conviction of the lesser included offense of possession of marijuana (Health & Saf. Code, § 11530) entered after a trial before a judge without a jury. Defendant Bobbie Harrington was sentenced to state prison, and defendant Marcie Harrington was granted probation.

*Facts:* On October 7, 1967, about 2:15 p.m., Deputy Sheriff Winkler went to the apartment occupied by defendants. He was in uniform and travelled on a department motorcycle. He went to the apartment, because he had received information by telephone from Deputy Sheriff Iavelli, a fellow officer, that a runaway juvenile was believed to be there and that there might also be narcotics on the premises. The only information Winkler had regarding the juvenile was that she was a girl named Sharon, 16 years old, 5 feet 9, with blonde hair. He had no arrest warrants for Sharon or defendants and had no search warrant for the premises.

Defendant Bobbie Harrington partially opened the door when Winkler knocked, and, upon being asked his name, identified himself. Winkler told Bobbie that he was looking for a missing juvenile named Sharon. Bobbie said that she had been there but was not there at that time. He then began to walk onto the porch, and Winkler asked if they could go inside and discuss the matter instead of remaining on the porch. Bobbie made no verbal response, but he stepped aside and made a gesture, which consisted of his extending his left hand about two feet out from his left leg. At the preliminary hearing, Winkler imitated the gesture, and the magistrate ruled that it indicated Bobbie wanted Winkler to come inside. In the living room, in plain sight, marijuana was found. Defendants were arrested, and additional marijuana was found in the apartment.

■ Prior to trial, defendants moved to suppress the evidence under section 1538.5 of the Penal Code, and it was stipulated that the motion be submitted on the transcript of the preliminary hearing. The motion was denied. The following day, at the commencement of their trial, defendants moved again to exclude the evidence, but the trial judge denied the motion.

*Questions:* First. *Was the superior court judge at the hearing on defendants' motion under section 1538.5 of the Penal Code entitled to rely on the magistrate's interpretation of the meaning of defendant Bobbie Harrington's gesture as an invitation to enter the apartment?*

*Yes.* As indicated above, at the preliminary hearing Winkler demonstrated the type of gesture Bobbie made;[1] the magistrate ruled it indicated Bobbie wanted the officer to come inside. ■ Contrary to defendants' contention, a consent to enter may be expressed by actions as well as words. (*People* v. *Baca* (1961) 198 Cal.App.2d 391, 396 [17 Cal.Rptr. 779]; *People* v. *Yancy* (1961) 196 Cal.App.2d 665, 667 [16 Cal.Rptr. 766].)

■ Defendants also argue that the superior court failed to afford them a trial de novo on the issue of consent, as required by Penal Code section 1538.5. That section provides in part that: "the defendant shall have the right to litigate the validity of a search or seizure de novo on the basis of the evidence presented at a special hearing." We have therefore reviewed the

---

[1]At the preliminary hearing, the following proceedings occurred: "THE COURT . . . would you indicate to the Court what kind of a gesture that he made and describe it as you are indicating. THE WITNESS: He was at the door. Well, in this manner, and as I walked in, he stepped aside and went like that. THE COURT: Which hand? THE WITNESS: With his left hand. THE COURT: And sort of brought it out to the side of his body—how far out? THE WITNESS: About as I have it here. THE COURT: Indicating two feet from his leg? THE WITNESS: From his left leg, yes."

transcript of the 1538.5 hearing to determine whether defendants received a de novo determination.[2]

By their stipulation to submit the matter on the preliminary hearing transcript, the parties deprived the superior court of the opportunity to observe the alleged gesture. Under this circumstance, the court was understandably influenced by the interpretation placed on that gesture by the magistrate. The superior court, however, did not treat the magistrate's ruling as conclusive, nor give it presumptive effect. It noted that defendants did not deny that a gesture was made, nor suggest that it had some other significance than the apparent one of ushering in the officer. We conclude

---

[2]The transcript of the section 1538.5 proceeding shows the following comments by the superior court:

"THE COURT: The gesture. The People are depending upon the gesture of the male defendant in a sense, as though to say, 'Come on in.' There appear to be no spoken words of invitation. But the officer asked, 'if I may go in so that we can talk it over further inside.' And then, as I understand the testimony, the male defendant took a step or so in the direction of inside and made a hand gesture at the side of his body, as though to say, 'Come in following me.'

" . . . . . . .

"THE COURT: Let me call your attention to page 9. It actually begins at page 7, but then there was another effort at beginning the description of what happened, and that starts at page 9. And the officer tells of the words that were used, and then he attempts in his own language to try to describe the gesture that was made. He doesn't just only say he assumed. The Court had him indicate what type of gesture it was, so that the Court then saw the manual gesture on the part of the officer, and the fact that he bound these defendants over means that he himself was able to take from the gesture he saw something that was akin to an invitation inside.

" . . . . . . .

"THE COURT: The only thing we have here is the use of a gesture rather than words, and I point out again the fact that the magistrate saw the gesture, and by binding this defendant over, indicates thereby that he deemed the officer reasonable in interpreting the gesture to be an invitation inside. To ask an officer, or any witness, for that matter, to demonstrate for purposes of a cold written record the type of gesture he saw is difficult. I would find it hard to describe just what type of gesture was made. And it looks even more confusing when you see it in the form of a transcript. I think that there is evidence that the officer was invited inside, not by the use of words, but by the use of the gesture, and that the motion must and is denied.

" . . . . . . .

"DEFENSE COUNSEL: But as to the finding of the magistrate in a preliminary hearing, I don't think that is equivalent to the examination by a Superior Court judge in a motion such as this.

"THE COURT: *I am not relying upon it as saying because he did it, I am going to do it.*

"[DEFENSE COUNSEL]: I understand, your Honor, but I think he only finds it on the basis of the strong suspicion, whereas we have to find it on the basis of the People producing reasonable and probable cause beyond the—getting past the requirement that they produce something to authenticate a non-warrant entry.

"THE COURT: I will stand on the ruling. And I will also call attention to the fact that there is nothing that has been presented on this motion to show that there was no gesture made, or that there was a gesture made like saying, 'Get lost.' " (Italics added.)

that the superior court did not merely review the finding of the municipal court, but made a de novo determination as required by section 1538.5.

■ Defendants contend, in effect, that Winkler's announced purpose in coming to their residence to look for a missing juvenile was a mere pretext and that such alleged misrepresentation vitiated any consent to his entry. While it is true that an entry obtained by trickery, stealth, or subterfuge renders a search and seizure invalid (*People* v. *Roberts,* 47 Cal.2d 374, 378 [303 P.2d 721]; *People* v. *Neal,* 181 Cal.App.2d 304, 307 [5 Cal.Rptr. 241]), there is no question here but that a teen-age girl named Sharon had been at defendants' apartment; according to Marcie's testimony, she had been staying in the apartment for about a week. In addition, Winkler testified, without contradiction, that he came to the apartment looking for a missing juvenile named Sharon, and he told Bobbie so on the porch; that Bobbie told him Sharon had been there but was not there then; and that after they entered the living room, he and Bobbie had a further conversation regarding Sharon and her whereabouts before he noticed any of the contraband. Under the circumstances, the issue was one of fact and of the credibility of witnesses, a matter for the trier of fact. (*People* v. *Kemp,* 55 Cal.2d 458, 471 [3] [11 Cal.Rptr. 361, 359 P.2d 913]; *People* v. *De Paula,* 43 Cal.2d 643, 649 [9] [276 P.2d 600].)

Defendants also contend that the fact Winkler was in uniform and had a gun, combined with his representation that he was searching for a missing juvenile, constituted coercion under the color of authority and implied that the occupants had no right to resist his entry. There is nothing to show, however, that Winkler ever unholstered his gun or engaged in any other potentially coercive or threatening action. Futhermore, neither defendant was under arrest at the time the consent was given; Winkler was merely interviewing Bobbie on the porch. There was, therefore, less of a coercive or compulsive nature to Bobbie's status when he gave the consent than there would have been had he been under arrest. (Cf. *People* v. *Stephenson,* 268 Cal.App.2d 908, 910-912 [74 Cal.Rptr. 504] (less information required to support temporary detention than to establish probable cause for arrest); see also *People* v. *Jolke,* 242 Cal.App.2d 132, 147-149 [51 Cal.Rptr. 171].)

■ Second. *Were defendants entitled to raise the issue of the illegality of the search and seizure at their trial, after denial of their motion to suppress under section 1538.5 of the Penal Code?*

*No.* Section 1538.5, subdivision (m), of the Penal Code provides: "The proceedings provided for in this section, Section 995, Section 1238, and

Section 1466 shall constitute the sole and exclusive remedies prior to conviction to test the unreasonableness of a search or seizure where the person making the motion for the return of property or the suppression of evidence is a defendant in a criminal case and the property or thing has been offered or will be offered as evidence against him. . . ." (See *People* v. *O'Brien,* 71 Cal.2d 394, 402 [8] [78 Cal.Rptr. 202, 455 P.2d 138, 456 P.2d 969].) This provision, enacted after our decision in *People* v. *Berger,* 44 Cal.2d 459 [282 P.2d 509], was clearly designed to change the rule laid down in that case.

■ Third. *Was the evidence sufficient to support the conviction of defendant Marcie Harrington?*

■ *Yes.* Proof of opportunity of access to a place where narcotics are found will not, without more, support a finding of unlawful possession. (*People* v. *Redrick,* 55 Cal.2d 282, 285 [2] [10 Cal.Rptr. 823, 359 P.2d 255].) But the necessary elements (that the accused exercised dominion and control over the drug with knowledge of both its presence and its narcotic character) may be established by circumstantial evidence and any reasonable inferences drawn from such evidence; and neither exclusive possession of the premises nor physical possession of the drug is required. (*People* v. *Roberts,* 228 Cal.App.2d 722, 726-727 [39 Cal.Rptr. 843]; see also *People* v. *Prochnau,* 251 Cal.App.2d 22, 30 [4a] [59 Cal.Rptr. 265].)

■ Here, Marcie was shown to be a permanent occupant of a relatively small apartment in which a large quantity of marijuana was found in places she ordinarily could be expected to frequent. Winkler first became aware of marijuana in the apartment when, as he was talking with Bobbie, he glanced around the living room and saw on the top of a desk, only four or five feet away, a large scale, the disk of which contained marijuana. A closer look revealed, just to the right of the scale, a clear glass jar containing hand-rolled cigarettes. A later search of the apartment revealed a plastic, sandwich-type bag containing marijuana stems and seeds in a file box on top of the desk; a carton containing 24 packets of cigarette papers on the desk near the scale; a metal container containing marijuana in the drawer of the scale; a red paper package containing 895 grams of marijuana in a paper bag on top of the cupboard; and a screen device with particles of marijuana caught in the screen in a low cupboard near the sink.

The two occupants of the apartment, which had only one bedroom, were husband and wife; and Marcie admitted having lived there about a

year. When Winkler first walked into the living room, she was standing in the doorway between the kitchen and the living room. From the above evidence, it was reasonable for the trial judge to conclude that Marcie shared the knowledge and possession of the contraband. (See *People* v. *Jackson,* 191 Cal.App.2d 296, 302 [12 Cal.Rptr. 798]; *People* v. *Crews,* 110 Cal.App.2d 218, 219-220 [242 P.2d 64].)

Marcie testified, with no direct testimonial contradiction, that she did not know of the presence of any of the marijuana in the apartment and that she had been in bed for a period of three months ending the day before her arrest. (She was pregnant at the time and gave birth to a child two months after her arrest.) As hereinabove stated, however, the credibility of a witness is a matter within the trial court's province. (*People* v. *Kemp, supra,* 55 Cal.2d 458, 471 [3]; *People* v. *De Paula, supra,* 43 Cal.2d 643, 649 [9].) In any event, even under Marcie's testimony she had been up for a full day before her arrest took place. In addition, the trial court had before it a photograph of Marcie taken in the living room of the apartment, which photograph the prosecution asserted, but Marcie denied, showed her rolling cigarettes.

■ Fourth. *Did the trial court err in denying defendant Bobbie Harrington probation on the ground that he did not cooperate with the probation officer?*

*No.* Section 1203 of the Penal Code requires that the probation officer make an investigation of the events leading to the imposition of punishment before there can be a reasonable basis for determination whether or not to grant probation. In the present case, counsel for Bobbie indicated that the only way Bobbie had failed to cooperate with the probation officer was in following counsel's instructions that Bobbie not discuss the details of the transaction involved in the instant case. The contention is made that Bobbie would "in effect, waive his right of appeal" if he were to discuss the facts and incriminate himself in his discussions with the probation officer. There is no basis for such a position, however, since the contents of probation reports are ordinarily not part of the record on appeal, and Bobbie's appeal herein consists essentially of constitutional and legal issues relating to search and seizure. ■ In addition, admissions made to a probation officer in the hope that candor will persuade the probation officer to make a favorable report to the court are not admissible either for substantive evidence or for impeachment in any retrial on the same issues. (*People* v. *Quinn* (1964) 61 Cal.2d 551, 554 [39 Cal.Rptr. 393, 393 P.2d 705].)

■ However, there may have been some confusion as to the admissibility of such statements due to our holding in *People* v. *Alesi* (1967) 67

Cal.2d 856, 861 [64 Cal.Rptr. 104, 434 P.2d 360], that the statements there made to the probation officer were admissible at a later trial. The statements there admitted were made under the guiding hand of counsel, they were volunteered, and no claim of privilege or confidentiality was asserted by defendant or counsel at the time of making the statements. *Alesi* should not be read as permitting the admission at a subsequent trial of the statements of a defendant to a probation officer unless the statements are made under such circumstances.

 Because the confusion as to the admissibility of statements made to probation officers may have caused defendant Bobbie Harrington to refuse to discuss the case, we are satisfied that justice will best be served by returning this case to the trial court for the preparation of a new probation report, at which time he will have the opportunity to enter into a full and frank discussion with his probation officer without fear that his statements may be used against him at a later trial.

The judgment as to defendant Marcie Harrington is affirmed. The judgment as to defendant Bobbie Harrington is reversed for the sole purpose of resentencing in accordance with the views expressed herein.

Burke, Acting C. J., Peters, J., Tobriner, J., Sullivan, J., and Roth, J.*

Appellants' petition for a rehearing was denied August 26, 1970.

---

*Assigned by the Acting Chairman of the Judicial Council.