[No. B024338. Second Dist., Div. Five. Nov. 30, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL DEMETRIUS ALLEN, Defendant and Appellant.

[No. B040881. Second Dist., Div. Five. Nov. 30, 1989.]

In re PAUL DEMETRIUS ALLEN on Habeas Corpus.

**COUNSEL**

Jonathan P. Milberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, John R. Gorey and Ivy K. Kessel, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LUCAS, P. J.—Paul Demetrius Allen appeals from judgment of conviction entered after a jury found him guilty of assault with a firearm (Pen. Code, § 245, subd. (a)(2)) and robbery (Pen. Code, § 211). He also petitions for writ of habeas corpus, asserting inadequate assistance of trial counsel. We affirm the conviction and deny the writ petition.

### FACTS

At 3:30 a.m. on September 25, 1985, Roscoe Williams was driving alone in the area of Saturn Street near Rimpau in Los Angeles, on his way to a friend's house to buy marijuana. As he drove slowly looking for a particular address, two people ran across the street in front of his car and another person came up to the passenger side of the car. Williams stopped his car, turned and saw a man at the driver's side window with a shotgun pointed at his face. The man, later identified as appellant, told Williams to get out of the car, which he did. Williams was asked how much money he had. Without answering, he reached into his pocket and took out his money. Alex DeLaney, who had been at the passenger side of the car, came around and took the money out of his hand. When DeLaney told appellant that Williams only had $12, appellant said that was not enough and he was going to shoot Williams. DeLaney moved his hand toward the barrel of the gun; appellant moved the gun away. Then he shot Williams, seriously wounding him in the thigh, hand and wrist.

Five days later, police officers interviewed Williams at the hospital. Williams selected appellant's photograph from a lineup card as the person who shot him. On a second visit about a month later, the officers showed Williams a folder containing six photographs. Williams picked out Alex DeLaney's photograph as the person who was present when he was shot.

Appellant was charged in a three-count information with attempted murder (Pen. Code, §§ 664, 187, subd. (a)), assault with a firearm (Pen. Code, § 245, subd. (a)(2)), and robbery (Pen. Code, § 211), with allegations of personal firearm use (Pen. Code, §§ 1203.06, subd. (a)(1), 12022.5) and great bodily injury (Pen. Code, § 12022.7). The jury found him not guilty of attempted murder and guilty of the remaining charges. The firearm use and great bodily injury allegations were found to be true. He was sentenced to the midterm of three years on the assault count, with an additional five years for the enhancements; sentence on the remaining count and enhancements was stayed pursuant to Penal Code section 654.

## IMPEACHMENT WITH STATEMENT TO PROBATION OFFICER

██ Appellant contends the court erred in permitting the prosecution to impeach Alex DeLaney with his prior inconsistent statements to his probation officer. We disagree.

Appellant and DeLaney were originally charged as codefendants in the attack on Roscoe Williams. Seven months before this trial began, DeLaney pled guilty to one count of robbery with an armed allegation. Prior to being sentenced, DeLaney made statements to a probation officer regarding his and appellant's involvement in the incident.

At trial, the prosecution called DeLaney as a witness. On direct examination, DeLaney described his participation in the robbery and assault. He also testified that the man who shot Williams was named T. Money, and that appellant was not involved in the incident at all.

The prosecution then sought to impeach DeLaney with prior statements he had made to his probation officer that appellant was "the guy with the shotgun" during the robbery. Defense counsel asked to have those statements excluded, relying on a series of cases recognizing use immunity for statements made by a defendant to his probation officer. The court found the cited authorities inapplicable and permitted impeachment with the prior statement.

██ "[A]dmissions made to a probation officer in the hope that candor will persuade the probation officer to make a favorable report to the court are not admissible either for substantive evidence or for impeachment in any retrial on the same issues." (*People* v. *Harrington* (1970) 2 Cal.3d 991, 999 [88 Cal.Rptr. 161, 471 P.2d 961].) The policy underlying this use immunity is that a defendant should feel free to enter into full and frank discussion with his probation officer without fear that his statements may be used against him at a later trial. (*Id.* at p. 1000.)

This policy has also led to use immunity in other situations where there is a compulsive sanction against an accused's exercise of the privilege against self-incrimination which conflicts with the need for full disclosure or discussion by the accused. (*People* v. *Dennis* (1986) 177 Cal.App.3d 863, 875-876 [223 Cal.Rptr. 236].) Thus, the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation is generally inadmissible against the probationer during subsequent proceedings on the related criminal charges, except for purposes of impeachment or rebuttal. (*People* v. *Coleman* (1975) 13 Cal.3d 867, 889 [120 Cal.Rptr. 384, 533 P.2d

1024].) Similarly, "testimony a minor gives at a fitness hearing or statements he makes to his probation officer may not be used against him at a subsequent trial of the offense." (*Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802, 810 [210 Cal.Rptr. 204, 693 P.2d 789].)

■ The case before us, however, presents no conflict between self-incrimination and candor requiring extension of this judicially created use immunity. Unlike the above cited cases, DeLaney's statements to his probation officer were not being used against him in his own criminal trial. He was not a defendant, but merely a witness in appellant's criminal trial. The policy of promoting an accused's candor and cooperation with his probation officer was adequately served by DeLaney's protection from use of any such statements against him in his own criminal trial. (*People* v. *Harrington, supra,* 2 Cal.3d at p. 999.) With DeLaney's privilege against self-incrimination safeguarded in this manner, we find no justification for extending the privilege to also protect appellant from incrimination by DeLaney. The court correctly permitted impeachment with statements DeLaney made to his probation officer.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ By petition for writ of habeas corpus, appellant asserts that his counsel was inadequate in that, despite evidence in the probation report that appellant may have been suffering from a serious head injury at the time he committed the offenses, defense counsel failed to seek a continuance to investigate the possible effect of the head injury on his behavior or argue the effects of the head injury as a mitigating circumstance to justify a reduced sentence.

The statement in the probation report to which appellant refers reads as follows: "Although defendant claims to be in good health, he indicates in the summer of 1985 he was hit in the head with a bumper jack and suffered a fractured skull, a concussion, spinal meningitis, and severed a nerve next to his right ear." This rather far-fetched complaint by appellant was unaccompanied by any assertion that it affected his mental state, and the probation officer made no observation of mental impairment. Moreover, appellant could have informed his own attorney of this claimed injury and any resulting mental effects at an earlier time, thereby permitting prompt investigation into the merits of such claim. The record discloses no such communication.

A defendant cannot withhold information from his own counsel and then claim inadequacy of counsel in failing to undertake an 11th-hour investigation into the matter. In the absence of any substantiation of appellant's belated claim of injuries or of their effects, counsel was not deficient in failing to seek a continuance for further investigation.

### DISPOSITION

The judgment is affirmed and the petition for writ of habeas corpus is denied.

Ashby, J., and Boren, J., concurred.