Filed 11/6/13  P. v. Calvin CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B239709 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA051713) |
| v. | |
| CARY L. CALVIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed with directions.

Holly J. Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Roberta L. Davis, Deputy Attorney General, for Plaintiff and Respondent.

————————————

Defendant Cary L. Calvin appeals his conviction of one count of possession for sale of a controlled substance (Vicodin) (Health & Saf. Code, § 11351), one count of possession for sale of cocaine base (Health & Saf. Code, § 11350, subd. (a)), one count of possession of marijuana for sale (Health & Saf. Code, § 11359), and one count of destruction of evidence (Pen. Code, § 135).[1] He contends (1) the evidence is insufficient to support his conviction of possession of Vicodin for sale, (2) the trial court abused its discretion in admitting evidence of text messages from his cell phone, and (3) the trial court erred in imposing a three-year enhancement. We affirm the judgment, and remand for resentencing.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendant was charged in an information filed February 24, 2011 in count 1 of possession for sale of dihydrocodeinone (Health & Saf. Code, § 11351); in count 2 of possession for sale of cocaine base (Health & Saf. Code, § 11351.5); in count 3 of possession for sale of marijuana (Health & Saf. Code, § 11359); in count 4 of sale/offer to sell/transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)); and in count 5 of destroying evidence, a misdemeanor (Pen. Code, § 135). The information alleged as to counts 1 and 2 that appellant had two prior drug convictions (Health & Saf. Code, § 11370.2, subd. (a)), and it was further alleged as to counts 1 through 4 that appellant had two convictions for which he served a prison term (Pen. Code, § 667.5, subd. (b)).

    *1.    Prosecution Case*

Los Angeles County Sheriff's Deputy Michael Rose was on patrol on January 28, 2011 at approximately 9:15 p.m. with his partner Deputy Robert Heins when he conducted a traffic stop of defendant's vehicle. As Deputy Rose approached the driver's side of the car, he smelled the odor of marijuana coming from the vehicle. Deputy Rose asked defendant if he had any marijuana in the vehicle, and defendant responded that he did. Deputy Rose noticed a brown marijuana cigarette sitting in the console area ash tray,

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

and asked defendant to step out of the vehicle. Defendant told Deputy Rose that he was a medical marijuana user.

After moving defendant to the back seat of the patrol car, Deputy Rose asked defendant to remove his shoes and socks, but Deputy Rose did not find any narcotics on defendant. Deputy Rose noticed defendant was moving his jaw and lips in a "weird way," by making side-to-side and rolling movements with his lips. Deputy Rose, who knew that it was common for persons with narcotics to put the drugs in their mouths when encountering police, asked defendant to open his mouth. Deputy Rose saw defendant had a shiny piece of plastic in his mouth; inside the plastic was a white powder. After Deputy Rose asked defendant to spit out the plastic, defendant began to chew and swallow. Deputy Rose and his partner again asked defendant to spit out the substance, but defendant refused. Deputy Rose grabbed defendant's jaw and looked in his mouth. Defendant's mouth had multiple bags with a white substance in them. Deputy Rose and his partner removed defendant from the patrol car and asked defendant to spit out the material in his mouth, but defendant refused, stating he had nothing in his mouth, claiming it was "just a blunt."

Defendant stopped chewing. The deputies stood defendant up and handcuffed him. The deputies were not able to recover anything from defendant's mouth, but later Deputy Heins discovered a chewed up bag with a white substance in it on the rear floor board of the patrol car. The bag was covered with saliva.

A search of defendant's car yielded two individually wrapped bags of marijuana inside a clear jumper cable bag. Inside defendant's right front pocket was a cell phone. In his left front pocket was a wad of currency consisting of one $100 bill, two $20 bills, a $10 bill, six $5 bills, and eight $1 bills. Deputy Rose found several text messages on defendant's cell phone that had been received that day. One stated, "Do you have any Vics [Vicodin] I can buy?" Another message stated, "I'm on schedule. Do you have . . . 40 V's I can get . . . and 11 [Nors (hydrocodone)] that I can get from you for 160?" Defendant responded, "yeah, okay. Come on." In another message, defendant

texted, "I have some Watsons [Vicodin]."[2]  Deputy Sheriff Daniel Welle also saw the texts on defendant's cell phone requesting Vicodin and Norco and defendant's outgoing messages with price quotes.

After giving defendant his *Miranda*[3] warnings, Deputy Rose asked defendant what had been in his mouth.  Defendant stated it was cocaine, and he liked to sprinkle cocaine on his marijuana.  Defendant then contradicted himself and said it was two Vicodin pills wrapped in a plastic bag.  Defendant admitted he did not have a prescription for Vicodin, and claimed he got them from his grandmother.  After further questioning, defendant admitted he had marijuana and Vicodin pills at his nearby home, as well as some crumbs of rock cocaine and a digital scale.

During Deputy Rose's questioning, defendant's cell phone rang nonstop, and several persons rode by on bicycles who appeared to recognize defendant.  Deputy Rose, who believed defendant had more narcotics at his house, became concerned that someone would give a "heads up" and remove any narcotics from defendant's house.  Therefore, Deputy Rose called for more units to lock down defendant's house.  Defendant refused to consent to a search of his house.  Several hours later, after obtaining a warrant, Deputy Rose and other sheriff's deputies conducted a search of defendant's home.

Upon entering defendant's house in Lancaster, deputies encountered "an overwhelming smell of fresh marijuana."  Inside kitchen cupboards were three glass jars containing high-grade marijuana.  A drawer held a tin container with a digital scale, digital gram scale, and several boxes of sandwich bags.  Inside the same drawer was a tall orange vial containing Watson 853's, which are a generic form of Vicodin (hydrocodone).  Deputies found a backpack in a bedroom containing a notebook with a "payola" sheet (a ledger of transactions), but defendant's name was not on the list.

---

[2] Pills marked "Watson 853" are a generic form of Vicodin.

[3] *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].

Another bedroom yielded a TV stand with two bags of marijuana, and inside a closet in that bedroom was a bag containing cocaine base.

The jars of marijuana contained 142 grams. In Deputy Welle's opinion, defendant possessed the marijuana, Vicodin and cocaine for sale based on the amount of marijuana and Vicodin; the lack of glass pipes, mirrors or plates with lines of cocaine, and other items to ingest the substances; the cell phone messages; the pay/owe sheets, the scales, and packaging materials. Deputy Welle could not recall if any of the text messages concerned sales of marijuana or cocaine. In Deputy Welle's experience, no text message is sent when the sale is concluded.

2. *Defense Case*

On January 8, 2011, defendant was on a double date with a male friend and two women. The two women drove to the rear of defendant's house, where one got out and asked to go inside so she could put on some makeup. Defendant went to the gas station to put some gas in his car. While doing so, he was pulled over by sheriff's deputies who asked if there was anything illegal in his car. Defendant, who was a medical marijuana user, had his dosage with him. After defendant made a flippant remark to one of the deputies, he was put in the back of the patrol car. The deputies asked him to remove his shoes and socks and open his mouth, and he complied. Defendant denied having bags of cocaine in his mouth, and denied chewing it or spitting it out. Defendant did not know who held the prescription for the 72 pills of hydrocodone found at his house. Although defendant knew one of the persons who had sent him a text message, he was not familiar with the messages on his phone regarding drug sales. Defendant makes his living as an entertainer and received royalty checks for songs he had written; the last check was for about $300. Defendant kept medical marijuana in the trunk of his car; that day he had a large amount because he was traveling to Los Angeles and needed more than one day's supply.

Thomas Johnson testified to impeach Deputy Rose that on one occasion while driving his children to school, he was stopped by Deputy Rose. Deputy Rose told

5

Johnson that he had seen Johnson throwing something out of the window of his car. Johnson, who denied he had thrown anything out of his car, refused to give Deputy Rose permission to search the car. Deputy Rose handcuffed Johnson and put him in the back of the patrol car and detained him from between 20 to 40 minutes. Johnson was not charged.

### 3.    Rebuttal

Detective Roger Izzo, an expert in drug sales, opined that the marijuana found in defendant's car was more than sufficient for one night's use as medical marijuana. In his opinion, the marijuana in defendant's car trunk was possessed for sale.

After the prosecution's case in chief, the court dismissed count 4 for insufficient evidence pursuant to section 1118.1. The jury found appellant guilty on counts 1, 3, and 5, not guilty on count 2, but guilty of the lesser included offense of possession of cocaine base (Health & Saf. Code, § 11350, subd. (a)). The jury found true all of the prior conviction allegations. The trial court sentenced defendant to a total term of nine years and 180 days in county jail, consisting of the midterm of three years on count 1, plus three years each for the two prior drug conviction enhancements, 180 days on count 5; and concurrent terms of two years each on counts 2 and 3. The court struck the prior prison term enhancements.

## DISCUSSION

## I.    Count 1:  Sufficiency of the Evidence of Possession of Vicodin for Sale

Defendant argues that there is insufficient evidence he possessed Vicodin for sale: there was no direct evidence of possession because the pills were found in defendant's kitchen while he was detained elsewhere; defendant asserted the pills found belonged to his grandmother; the pills were found in a shared place, the kitchen. On this last point, he contends the prosecution misstated the law when it argued that as long as defendant resided in a place where narcotics were found, such a fact alone would support a finding of possession.

6

## A. *Factual Background*

During closing argument, the prosecution told the jury, "[Defendant] tried to make a big deal about whether or not there was a rental agreement, whether or not there was title or a deed to the home. It's irrelevant. Because as long as he lives there, he is a resident of that home, he has possession of the Vicodin. [¶] . . . [¶] Then I asked him, did you—have you seen the Vicodin pills prior to that night? And his answer was, yes. But he says it's not his. So as far as possession of the controlled substance, it's in his custody and dominion."

The jury was instructed with CALCRIM No. 2302, possession for sale of a controlled substance: "The defendant is charged in Counts 1 and 2 with possession for sale of dihydrocodeinone, also known as Vicodin, and cocaine base, controlled substances. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant [unlawfully] possessed a controlled substance; [¶] 2. The defendant knew of its presence; [¶] 3. The defendant knew of the substance's nature or character as a controlled substance; [¶] 4. When the defendant possessed the controlled substance, he intended to sell it; [¶] 5. The controlled substance was dihydrocodeinone, also known as Vicodin, and cocaine base; [¶] AND [¶] 6. The controlled substance was in a usable amount. [¶] *Selling* for the purpose of this instruction means exchanging the controlled substance for money, services, or anything of value. [¶] . . . [¶] Two or more people may possess something at the same time. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person."

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We "resolv[e] all conflicts in [the] evidence and questions of credibility in favor of the verdict, and indulge every reasonable inference the jury could

draw from the evidence." (*People v. Autry* (1995) 37 Cal.App.4th 351, 358.) Reversal on this ground is unwarranted unless "'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*Bolin*, at p. 331.) "'[T]he appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] This standard applies whether direct or circumstantial evidence is involved." (*People v. Catlin* (2001) 26 Cal.4th 81, 139.)

Unlawful possession of a controlled substance for sale requires proof that the defendant possessed the substance with the intent to sell, and with knowledge of its presence and its illegal character. "Intent to sell may be established by circumstantial evidence." (*People v. Harris* (2000) 83 Cal.App.4th 371, 374.) "In cases involving possession of marijuana or heroin, experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as the quantity, packaging and normal use of an individual; on the basis of such testimony convictions of possession for purpose of sale have been upheld." (*People v. Newman* (1971) 5 Cal.3d 48, 53; *Harris*, at pp. 374–375.) Constructive possession exists where a defendant maintains some control or right to control contraband that is in the actual or constructive possession of another. Exclusive possession is not required. (See *People v. Morante* (1999) 20 Cal.4th 403, 417; *People v. Francis* (1969) 71 Cal.2d 66, 71.) In addition, possession may be imputed to the defendant where the narcotics are found in a place easily accessible to the defendant, or under the joint dominion control of defendant or another. (*People v. Williams* (1971) 5 Cal.3d 211, 215.) However, "[p]roof of opportunity of access to a place where narcotics are found will not, without more, support a finding of unlawful possession." (*People v. Harrington* (1970) 2 Cal.3d 991, 998.) "As might be expected, no sharp line can be drawn to distinguish the congeries of facts which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic in a place to which he had access, but not exclusive access, and over which he had some control, but not exclusive control." (*People v. Redrick* (1961) 55 Cal.2d 282, 287.) Some factors evidencing possession where there is nonexclusive

8

dominion include a showing of consciousness of guilt and that the contraband was found among defendant's personal effects. (*Id.* at pp. 287–288.)

The prosecution is given wide latitude during argument. "'The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. [Citations.] It is also clear that counsel during summation may state matters not in evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature.' [Citation.] 'A prosecutor may "vigorously argue his case and is not limited to 'Chesterfieldian politeness'" [citation], and he may "use appropriate epithets warranted by the evidence.'" [Citations.]" (*People v. Wharton* (1991) 53 Cal.3d 522, 567–568.) On the other hand, the "prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the State. [Citation.] . . . [T]he prosecutor represents 'a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' [Citation.]" (*People v. Espinoza* (1992) 3 Cal.4th 806, 820.)

Prosecutorial misconduct occurring during argument may take a variety of forms, including: mischaracterizing or misstating the evidence, referring to facts not in evidence, or misstating the law, particularly where done in an effort to relieve the People of responsibility for proving all elements of a crime beyond a reasonable doubt. (*People v. Hill* (1998) 17 Cal.4th 800, 823, 827–830.) Prosecutorial misconduct mandates reversal when "it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] But conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."' [Citations.]" (*People v. Espinoza*, *supra*, 3 Cal.4th at p. 820.)

9

Here, we find no error. The court informed the jury that two or more people could possess a narcotic, and that it was enough if the person had control over the narcotic or the right to control it, either personally or through another person. Given that defendant argued he had to have legal title to the residence in order to possess the Vicodin, the prosecution's argument must be read in that context, namely, that defendant did not need to own or rent the residence in order to have possession of the Vicodin. Rather, it was sufficient that defendant had ready access to the house—a fact defendant admitted. Further, defendant variably testified that the Vicodin was his or his grandmother's prescription, although the pill bottle contained no prescription label, the lack of a label does not contradict shared custody of the Vicodin.

## II. Admission of Cell Phone Text Messages

Defendant contends the trial court abused its discretion when it permitted Deputy Rose to testify concerning the contents of defendant's cell phone text messages because the evidence lacked proper foundation: Deputy Rose did not preserve the text messages, present any evidence of the phone, or a printout of the messages at trial. Defendant points to the fact that during deliberations the jury asked for an identification of police report containing the text messages and wanted to know why the prosecution witnesses testified to the messages. The court advised the jury that the text messages were qualified as admissible evidence pursuant to an exception to the hearsay rule.

A writing must be authenticated before it is introduced into evidence. (Evid. Code, § 1401, subd. (a).)[4] "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, § 1400.) "Authentication of a writing is required before secondary evidence of its content may be received in evidence." (Evid. Code, § 1401,

---

[4] We assume, without deciding, that text messages are a writing within the meaning of the Evidence Code, a proposition with which neither party disagrees.

10

subd. (b).) "Circumstantial evidence, content and location are all valid means of authentication [citations]." (*People v. Gibson* (2001) 90 Cal.App.4th 371, 383.)

Here, defendant was in possession of his cell phone at the time of the traffic stop, and admitted to the deputies it was his cell phone. Deputy Rose testified to the contents of several text messages regarding drug transactions that were received on the cell phone the same day as the traffic stop. Deputy Welle also testified that he saw and read the same text messages on defendant's cell phone. These facts constitute sufficient authentication; the fact that the jury expected to see a print out or other tangible reproduction of the text messages does not render the deputies' authentication invalid.

Even assuming the evidence was erroneously admitted, defendant can show no prejudice because there was ample other evidence that he engaged in the sale of narcotics such that it is not reasonably probable the result would have been different if the text messages had not been admitted at trial: the amounts of narcotics possessed were greater than that possessed by a recreational user and defendant had paraphernalia in his home associated with drug sales (digital scales, baggies, payment ledgers). (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## III.    Evidence of Defendant's Prior Conviction

Defendant contends the trial court erred in relying on a prior conviction from 1997 that was not proved at trial in imposing a three-year sentence enhancement on count 1, and argues the enhancement must be stricken. The People concede the error, but requests that we remand for resentencing so that the trial court can restructure defendant's sentence because in sentencing defendant, it struck a prior prison term in the interests of justice and ordered the sentences to run concurrently. We agree and remand for resentencing.

### A.    *Factual Background*

The information alleged that defendant had two prior drug convictions within the meaning of Health and Safety Code section 11370.2, subdivision (a). One of those convictions was a September 4, 1997 conviction for a violation of Health and Safety

11

Code section 11352, subdivision (a), in case No. VA041407. The information also alleged a conviction for a violation of Health and Safety Code section 11351.5 dated April 8, 2005, case No. MA031174. The information further alleged that defendant served prison terms in case Nos. MA031174 and MA027896 (for a February 2004 conviction for a violation of Health & Saf. Code, § 11359).

However, at sentencing, the prosecution sought to introduce two exhibits (exhibits 13 & 14) to establish defendant's prior convictions. Exhibit 13 was not admitted because it did not contain the prior conviction alleged in the information. Exhibit 14 established that defendant was in prison from 2004 through 2007 for convictions in case Nos. MA027896 and MA031174, but there was no evidence of defendant's 1997 conviction in that packet.

The jury found true the prior conviction allegation on count 1 that defendant had been convicted on September 4, 1997 of a violation of Health and Safety Code section 11352, subdivision (a) in case No. VA041407. Defendant moved to strike the finding, but the court denied his motion. The trial court sentenced defendant to a total term of nine years and 180 days in county jail, consisting of the midterm of three years on count 1, plus three years each for the two prior drug conviction enhancements, 180 days on count 5; and concurrent terms of two years each on counts 2 and 3. The court struck the prior prison term enhancements.

The People must prove each element of a sentence enhancement beyond a reasonable doubt. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1066.) A common method to prove the fact and nature of a prior conviction is to introduce certified documents from the record of the prior court proceeding and commitment to prison, including the abstract of judgment describing the prior offense. "On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt. [Citations.]" (*Id.* at pp. 1066–1067.)

12

Here, insufficient evidence supports the imposition of one of the two three-year enhancements on count 1.  Only one of the prior convictions alleged in the information was proved by exhibit 14; no evidence of defendant's 1997 conviction was presented.  Thus, the trial court erred in imposing the second three-year enhancement on count 1 because it relied on information not in the record.  However, because the trial court exercised sentencing discretion in fashioning defendant's sentence, we remand for resentencing to permit the trial court to restructure defendant's sentence.  (*People v. Rodriguez* (2009) 47 Cal.4th 501, 509.)

## DISPOSITION

The judgment is affirmed.  Defendant's sentence is vacated and the matter is remanded for resentencing to permit the trial court to restructure defendant's sentence.  The trial court is directed to forward to the Department of Corrections an amended abstract of judgment.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.

13