Filed 3/5/15  P. v. Ortiz CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARSELINA ORTIZ,<br><br>    Defendant and Appellant. | B249930<br><br>(Los Angeles County<br>Super. Ct. No. NA091953) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Arthur Jean, Jr., Judge.  Affirmed in part, reversed in part, and remanded with directions.

Law Offices of Pamela J. Voich and Pamela J. Voich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Marselina Ortiz, appeals her conviction for possession of methamphetamine, and possession of methamphetamine for sale, with a prior prison term finding (Pen. Code, § 667.5; Health & Saf. Code, §§ 11377, 11378).[1] She was sentenced to county jail for a term of four years eight months.

The judgment is affirmed in part, reversed in part, and remanded for partial resentencing.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

On March 29, 2012,[2] Los Angeles Police Officer Robert Castruita arrested Manuel Quintero and found in his possession a key to Room 205 at the Vagabond Inn motel. Castruita obtained a search warrant and searched the room on March 30. He found 111 grams of methamphetamine in a clear plastic bag. He also found a handgun, a digital scale, empty plastic baggies, and a binder containing what appeared to be a pay-owe sheet.

According to the Vagabond Inn's registration records, Quintero and Ortiz had rented Room 205 from March 26 until March 30, although it was Ortiz who checked in. The records showed that on March 30, Quintero and Ortiz moved to Room 203. Then on March 31, Ortiz alone moved to Room 210.

Officer Castruita returned to the Vagabond Inn on the night of March 31 and found Ortiz in the parking lot. She told him that she "was staying in Room 210." After confirming this with the Inn, Castruita detained Ortiz and obtained her consent to search Room 210. In a nightstand, Castruita found a black plastic bag containing a little more than 111 grams of methamphetamine, along with clear plastic baggies. There were pay-owe sheets similar to the one found in Room 205. Some of Quintero's clothing was

---

[1]     All further references are to the Penal Code unless otherwise specified.

[2]     All further date references are to the year 2012 unless otherwise specified.

2

found in Room 210, but nothing belonging to Ortiz. Ortiz had two cell phones inside her purse. When she was booked, police found a baggie with 0.22 grams of methamphetamine in her possession.

Ortiz told Castruita she had rented Room 205 as a favor to Quintero, who compensated her for doing so. She knew Quintero was selling drugs from Room 205 and that there was a gun in the room. However, Ortiz denied knowing there was any methamphetamine in Room 210.

There were text messages on Ortiz's cell phone apparently related to drug trafficking.

Officer Jeremy Cohen testified as an expert on methamphetamine sales. Responding to hypothetical questions based on the facts of this case, he opined the 111 grams of methamphetamine found in Room 205 were possessed for sale. He based this conclusion on the $3,000 value of the methamphetamine, the digital scale which would have been used for measuring purchase amounts, the gun which would have been used for protection and to collect debts, and the pay-owe sheet which would have been used to track drug sales. Cohen opined the 111 grams of methamphetamine found in Room 210 were also possessed for sale, based on the value of this amount, the pay-owe sheets, and the room switching that had taken place (Cohen testified it was a common tactic for drug dealers to change hotel rooms in order to disguise their business operations).

Regarding the drug-related text messages on Ortiz's cell phone, Cohen explained that references to a "dime" of methamphetamine meant one tenth of a gram, which was worth $10, while an "eight ball" referred to three and a half grams of methamphetamine worth between $120 and $150. A tenth of a gram of methamphetamine was a usable amount which, if pure, would last a few days. Cohen opined the text messages on Ortiz's phone indicated she was trafficking methamphetamine.

3

2. *Defense evidence*.

Ortiz testified she had been dating Quintero's brother when Quintero asked her to rent a room for him at the Vagabond Inn. Quintero said he had been fighting with his girlfriend and wanted a place to sleep, but he didn't have identification and could not rent a room on his own. Ortiz rented the room and gave Quintero the key. She did this as a favor and he did not pay her. Ortiz denied having been inside any of the three rented rooms at the Vagabond Inn. She denied having told Castruita otherwise, or that she knew Quintero was selling drugs, or that he had paid her to rent the rooms.

When Quintero called Ortiz on March 31 and asked her to rent a different room for him, she was unaware he had already been arrested. That night she heard a rumor about his arrest and she was on her way to the motel room to check it out when she ran into Officer Castruita in the parking lot.

Ortiz acknowledged that a text message on her cell phone from her mother was a request for drugs.[3] Ortiz testified she and her mother occasionally used drugs together. In an exchange of text messages with someone named Clint, she asked him for two "eight balls" for her personal use.[4]

Ortiz had been convicted of felony petty theft with priors in 2008 and then again in 2009.

## CONTENTS

1. There was insufficient evidence to sustain Ortiz's conviction for drug trafficking.

2. The prior prison term enhancement must be vacated because Ortiz never admitted it.

3. This court should conduct an in camera *Pitchess* review.

---

[3]   Ortiz's mother had texted her: "I need dime and yes I got the 10."

[4]   Ortiz had texted Clint, "U got to [*sic*] 8 balls for a how much what about 120," to which Clint replied, "120 each."

4

4.  [By the Attorney General]  The trial court failed to impose certain mandatory penalty assessments and surcharges.

## DISCUSSION

1. *There was sufficient evidence to sustain the drug trafficking conviction.*

Ortiz contends there was insufficient evidence to sustain her conviction for possession of methamphetamine for sale.  This claim is meritless.

a.  *Legal principles.*

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence – that is, evidence that is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  The federal standard of review is to the same effect:  Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  [Citation.]  The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.  [Citation.]  ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt.  ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

" 'An appellate court must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence.' [Citation.]  'Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear

5

that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact].' [Citation.]" (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) As our Supreme Court said in *People v. Rodriguez, supra,* 20 Cal.4th 1, while reversing an insufficient evidence finding because the reviewing court had rejected contrary, but equally logical, inferences the jury might have drawn: "The [Court of Appeal] majority's reasoning . . . amounted to nothing more than a different weighing of the evidence, one the jury might well have considered and rejected. The Attorney General's inferences from the evidence were *no more inherently speculative* than the majority's; consequently, the majority erred in substituting its own assessment of the evidence for that of the jury." (*Id.* at p. 12, italics added.)

"The elements of possession of narcotics are physical or constructive possession thereof coupled with knowledge of the presence and narcotic character of the drug. [Citations.] Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another. [Citation.] The elements of unlawful possession may be established by circumstantial evidence and any reasonable inferences drawn from such evidence." (*People v. Newman* (1971) 5 Cal.3d 48, 52, disapproved on other grounds by *People v. Daniels* (1975) 14 Cal.3d 857, 862.) "Proof of opportunity of access to a place where narcotics are found will not, without more, support a finding of unlawful possession. [Citation.] But the necessary elements (that the accused exercised dominion and control over the drug with knowledge of both its presence and its narcotic character) may be established by circumstantial evidence and any reasonable inferences drawn from such evidence; and *neither exclusive possession of the premises nor physical possession of the drug is required*. [Citations.]" (*People v. Harrington* (1970) 2 Cal.3d 991, 998, italics added.)

It is well-settled that experienced officers may give their opinion that narcotics are being held for purposes of sale based upon such matters as quantity, packaging, and normal use by an individual. (*People v. Parra* (1999) 70 Cal.App.4th 222, 227.) An

6

expert may testify about the methods and techniques of street-level drug dealers, including the significance of drug paraphernalia, quantities, and prices. (See *United States v. Thomas* (6th Cir. 1996) 74 F.3d 676, 682, disapproved on other grounds in *Morales v. American Honda Motor Co.* (6th Cir. 1998) 151 F.3d 500, 515 ["Courts have overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area, such as drug dealing, not within the experience of the average juror."].)

      b. *Discussion*.

Ortiz argues there was nothing to connect her to the drugs found at the Vagabond Inn because Quintero's things were in all the rented rooms, whereas there was nothing of hers in those rooms. But Ortiz is ignoring the evidence showing Ortiz herself told Castruita she had been staying in Room 210, that she had been inside Room 205, and that she knew Quintero was selling drugs.

Ortiz argues, "Even if appellant could somehow under these circumstances be found to be in constructive knowing possession of the bag of meth in the nightstand of Room 210, there is no evidence to support a finding she specifically intended to sell the drugs." But this argument ignores the circumstantial evidence showing the only reason for possessing this methamphetamine would have been to traffic it: i.e., the extremely large quantity, the baggies, the pay-owe sheets, and the incriminating text messages on Ortiz's cell phone. Being in constructive possession of the drugs in Room 210 also tied Ortiz to the drugs found in Room 205 because she had rented that room as well.

Ortiz argues the text messages on her cell phone merely showed she had been purchasing methamphetamine for the personal use of herself and her mother. But this fails to explain a text message from someone named Edwin asking Ortiz, "Marcy can you get for me 8 ball?," or a text message from someone named Emilio telling Ortiz "i want to get more than usual but havent been able to catch you more than a dove," to which Ortiz responded, "I got it now I just picked up but I'm in [Long Beach.]" Officer Cohen testified "[a] dove is similar to a dime," i.e., a tenth of a gram, and that this conversation was consistent with Ortiz possessing methamphetamine for sale. Another text shows

Ortiz apparently negotiating to buy seven grams of methamphetamine from someone named Clint. Officer Cohen explained a tenth of a gram would last for two days, which means in this transaction Ortiz was trafficking an amount that would have lasted for months had it really been for her personal use.

During closing argument, the prosecutor pointed to the text messages as clarifying any ambiguity in the People's case, to which defense counsel replied only: "Now, there are some text messages on her phone that seem[ ] to indicate that she is either picking up drugs for people or getting drugs from somebody. I can't dispute that. That's what she does. She picks up drugs for people. That shows that she uses meth. She probably shares drugs with her friends and her mom. You can tell from the texts. She picks up the drugs because she is the one that knows the drug dealer." Despite this spin on the evidence, the jury reasonably concluded the evidence showed Ortiz was trafficking, not simply running free drug errands for her friends and relations.

The inculpatory inferences from the circumstantial evidence were certainly "no more inherently speculative" than the exculpatory inferences, and hence there was sufficient evidence to sustain Ortiz's conviction for possession of methamphetamine for sale. (See *People v. Rodriguez, supra*, 20 Cal.4th at p. 12.)

2. *Prior prison term enhancement was properly imposed.*

Ortiz contends the trial court improperly imposed a one-year prior prison term enhancement (§ 667.5, subd. (b)) because she never admitted the truth of this allegation. There is no merit to this claim.

Ortiz concedes the information properly alleged she had served a prior prison term for a 2009 conviction, and that the trial court properly advised her she had the right to a trial on the issue where she could confront witnesses, testify or remain silent. Ortiz contends the problem lies in the following colloquy: "The Court: Miss Ortiz, I am told that you are going to admit the priors that are alleged against you. [¶] Is that right? [¶] The defendant: Oh, yeah."

Ortiz argues this exchange could not qualify as her admission of the prior prison term allegation because "respondent does not and cannot cite to any part of the record

8

where this admission was thereafter taken." But on the very next page of the trial transcript the court said: "I find a knowing, intelligent and voluntary waiver. *The admission is accepted.*" (Italics added.)

Ortiz argues her case is "almost identical" to *People v. Lopez* (1985) 163 Cal.App.3d 946. But there the defendant purportedly admitted a five-year prior serious felony conviction enhancement (§ 667, subd. (a)) based on *residential* burglary, although "[i]t was never expressly alleged that the prior burglaries were residential, defendant was never asked to and did not admit that they were residential burglaries, no evidence was adduced to so establish, and the court was not requested to and did not take judicial notice of the superior court files mentioned in the allegations. [¶] Defendant's admission that he suffered two prior burglary convictions was insufficient alone to establish that the prior convictions were for residential burglaries." (*Id*. at p. 950.) The issue here is different, i.e., whether the record demonstrates Ortiz made a valid admission to properly-stated allegations.

We conclude the trial court did not err by imposing the prior prison term enhancement.

3. *Review of in camera* Pitchess *hearing.*

Ortiz requests review of the trial court's ruling on her motion seeking discovery under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531. Review of the in camera hearing by this court reveals no abuse of the trial court's discretion as to discovery of Officer Castruita's personnel file. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1232.) The trial court conducted the hearing properly, describing the nature of all the complaints against the officer.[5]

---

[5] Ortiz asks us "to determine if the trial court abused its discretion in refusing to order discovery of all the requested information from the personnel files of Officers Shortle, Castruita, and Quiroz." As to Shortle, Ortiz failed to explain, either in the *Pitchess* motion or on appeal, how this officer was involved in Ortiz's arrest, and we have not been able to find this officer's name in the record. As for Quiroz, Ortiz's notice of motion sought records only for Shortle, and Ortiz made no claim of misconduct by Quiroz. As to Castruita, the trial court did grant discovery of any claims relating to

4. *Trial court failed to impose several mandatory penalty assessments and surcharges.*

The Attorney General contends the trial court erred by failing to impose certain mandatory penalty assessments and surcharges. Although this claim appears to be correct so far as it goes, the Attorney General does not mention several other mandatory penalty assessments and surcharges that would seem to be applicable. Therefore, we will remand for resentencing as to these monetary penalties only.

In addition to sentencing Ortiz to a county jail term of four years eight months, the trial court ordered her to pay the following amounts: a $40 court security fee (§ 1465.8) on each of her two conviction counts, a $30 criminal conviction assessment (Gov. Code, § 70373) for each conviction count, a $50 narcotics laboratory fee (Health & Saf. Code, § 11372.5) for the count 1 conviction, and a $280 restitution fine (§ 1202.4). The Attorney General contends the trial court erred because, based on the laboratory fee, the court should have ordered Ortiz to pay an additional $85 in penalty assessments pursuant to section 1464 and Government Code section 76000, a $10 surcharge pursuant to section 1465.7, and a $15 state court construction penalty under Government Code section 70372.

However, the Attorney General makes no mention of other monetary penalties that are seemingly applicable to this case. For example, Health and Safety Code section 11372.5, subdivision (a), provides: "Every person who is convicted of a violation of Section . . . 11377, 11378 . . . of this code . . . shall pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense." The trial court imposed a laboratory fee (and attendant penalty assessments and surcharges) for Ortiz's possession of methamphetamine for sale conviction (Health & Saf. Code, § 11378), but

---

dishonesty, the only relevant factor. Despite the fact Ortiz raised the issue of the *Pitchess* review regarding the other officers in her opening brief, she completely failed in her reply brief to respond to the Attorney General's explanation. The failure to properly develop an argument is fatal on appeal. (See *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived."].)

not for her simple possession of methamphetamine conviction (Health & Saf. Code, § 11377).

In addition, the Attorney General has said nothing about other mandatory penalties: the DNA penalty assessment under Government Code section 76104.6[6]; the related state-only penalty under Government Code section 76104.7[7]; or the penalty assessment to support county emergency medical services under Government Code section 76000.5.[8]

For these reasons, we will remand to the trial court for a partial resentencing in order to obtain a correct calculation of the fines, assessments and surcharges to be imposed in this case.

---

[6] Government Code section 76104.6, subdivision (a)(1), in pertinent part, provides that "for the purpose of implementing the DNA Fingerprint, Unsolved Crime and Innocence Protection Act (Proposition 69), as approved by the voters at the November 2, 2004, statewide general election, there shall be levied an additional penalty of one dollar ($1) for every ten dollars ($10), or part of ten dollars ($10), in each county upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses."

[7] Government Code section 76104.7, subdivision (a), in pertinent part, provides that "in addition to the penalty levied pursuant to Section 76104.6, there shall be levied an additional state-only penalty of four dollars ($4) for every ten dollars ($10), or part of ten dollars ($10), in each county upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses."

[8] Government Code section 76000.5, subdivision (a)(1), in pertinent part, provides that "for purposes of supporting emergency medical services pursuant to Chapter 2.5 (commencing with Section 1797.98a) of Division 2.5 of the Health and Safety Code, in addition to the penalties set forth in Section 76000, the county board of supervisors may elect to levy an additional penalty in the amount of two dollars ($2) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses."

**DISPOSITION**

The judgment is affirmed in part, reversed in part, and remanded for partial resentencing in accordance with this opinion, in order to properly calculate the fines, assessments and surcharges that should have been imposed in this case. In all other respects, the judgment is affirmed. The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

KITCHING, J.

ALDRICH, J.